Pennington v. Woolfolk, &c.

———

CASE 3—EQUITY—APRIL 20, 1880.

# Pennington v. Woolfolk, &c.

APPEAL FROM JEFFERSON COMMON PLEAS COURT.

1. The county court, although classed in the judiciary department by the constitution, and possessing judicial powers, is not exclusively a judicial tribunal.   Many other matters not judicial have been vested in this court since the adoption of the first constitution of Kentucky.

2. The act, entitled "An act to amend article three of chapter five of the General Statutes," approved February 23, 1874, is unconstitutional.

3. The subject of the act is not expressed in its title.

R. W. WOOLLEY AND P. B. MUIR FOR APPELLANT.

1. The writ of prohibition is an extraordinary judicial writ, issuing from a court of superior jurisdiction.   (High on Ex. Rem., sec. 762; Fitzherbert's Natura Brevium, 39.)

2. It is the remedy afforded by the common law against the encroachments of jurisdiction by inferior courts.   (High on Ex. Rem., sec. 762; Thomas v. Meads, 36 Mo., 232; People v. Woods, 7 Wend., 486; Civil Code, sec. 479; 5 Dana, 20; 20 N. Y., 531; Jacob's Law Dic., title "Prohibition;" 1 Term Rep., 552; 3 Ib., 3; Brooke's Cases, Vaughan, 157; 209 Langdell's Case; 12 Coke, 58, 109; 2 Institutes, 601; Fitzherbert's Nat. Brev., 40; Moore, 780; Anderson's Rep., 258; 13 Coke, 9; 6 Mod., 91;·13 Coke, 4; 6 Mod., 78; 1 Levinz's, 164.)

3. The county court had no jurisdiction to take cognizance of the petition.   (6 Bonney, 98; 4 Peters, 511; 17 Johnson, 283; 14 East., 370; 11 Ib., 290, 518; Gen. Stat., 430; Johnson v. City of Lexington, 14 B. Mon., 648.)

4. The whole statute is vicious and unconstitutional. · (10 California, 402; Marshall v. McDaniel, 12 Bush, 385; Campbell County Court. v. Taylor, 8 Ib.; 6 Bush, 581; 1 Ib., 250.)

C. B. SEYMOUR AND L. C. WOOLFOLK FOR APPELLEES.

1. A demurrer was a proper proceeding. A writ of prohibition was not the proper remedy. (High on Ex. Rem., sec. 770; sec. 3, art. 1, chap. 93, Gen. Stat.)

2. The county court has jurisdiction. (Act Feb. 23, 1874; Sess. Acts, 67.)

3. The act is constitutional. (L. & N. R. R. Co. v. Commonwealth, 1 Bush, 250; McAllister v. Commonwealth, 6 Bush, 581; Barrett v. City of Henderson, 4 Bush, 255.)

CHIEF JUSTICE COFER DELIVERED THE OPINION OF THE COURT.

Proceedings were instituted in the Jefferson county court by the appellee, who is county attorney of that county, under an act, entitled "*An act to amend article three of chapter five of the General Statutes*," approved February 23, 1874, Acts 1873–'4, 147).

By that act the General Assembly attempted to re-enact sections 3, 4, 5, 6, 7, 8, and 10, of article 1, sections 1 and 5, of article 2, and sections 2, 3, 4, 5, and 6, of article 3, of chapter 93, of the General Statutes, which had been previously repealed, and to impose upon the county attorney of the counties respectively, the duties imposed by chapter 93 upon the revenue agent.

Section 3 of chapter 93, as re-enacted by the act of 1874, *supra*, and thereby made part of chapter 5, provides that when any person owning property in this Commonwealth has failed, since January 10, 1856, to list his property with the assessor, whose duty it was to assess the value thereof, or with the supervisors of tax, or the clerk of the county court, it shall be the duty of the county attorney to give information thereof to the county court of the county in which said property should have been listed; and that the court shall summon such person before it, and upon being satisfied that he has failed to list his property, "to assess and fix the value of the same for the years such property was not

.assessed, and the *same* shall be certified by the said court to the proper officers for the collection *thereof*.

The appellant appeared in the county court, and moved to quash the summons; but his motion was overruled. He then demurred to the information, and the demurrer having been also overruled, he applied to the common pleas court for a writ of prohibition against the county judge and county attorney forbidding them to take any further action in the proceeding against him.

The common pleas court sustained a demurrer to the petition, and dismissed it. This appeal is from that judgment.

It is not claimed that the county court was proceeding irregularly, if it had jurisdiction to proceed in the matter at all.

In the recent case of Howell v. Commonwealth (ante), it was contended that the statute is unconstitutional, because the title does not indicate the subject of the act; but we did not find it necessary to pass upon the point in that case.

In this case the point there made is not relied upon. If, however, we find the act constitutional in other respects, it will become necessary to decide whether the title is insufficient, because if, for that reason, the act is void, the county court had no jurisdiction, even to entertain the proceeding.

The objection taken to the act in this case is, that by it the Legislature has attempted to confer on a judicial tribunal a power not judicial in its nature, in violation of article one of the Constitution, which declares that—

SEC. I. "The powers of the government of the State of Kentucky shall be divided into three distinct departments, and each of them be confided to a separate body of magistracy, to-wit: Those which are legislative to one; those

which are executive to another; and those which are judiciary to another.

SEC. 2. "No person, or collection of persons, being of one of those departments, shall exercise any power properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted."

The power to impose taxes is legislative, and cannot be conferred, under our constitution, upon a strictly judicial tribunal or officer.

The power to assess property for taxation, that is, to apportion the tax upon the property upon which the legislature has imposed it, is not judicial, and can no more be conferred upon a judicial tribunal than the power to levy taxes.

But the county court, although classed in the judiciary department by the constitution, and possessing judicial powers, is not an exclusively judicial tribunal.

We might not be able to sustain this position if compelled to rely alone upon the constitution, and denied the right to look to the practical construction uniformly given to it since the formation of the government.

But in the light of the unchallenged action of all departments of the government since the adoption of the constitution of 1792 to the present time, we entertain no doubt that the county court must now be regarded, as respects a number of matters local and exceptional in their nature, as excepted out of this provision of the constitution.

Each of the prior constitutions contained the precise language of our present constitution quoted *supra*.

In 1793 (M. & B., 503), the legislature enacted a law making it the duty of the county court "to take bond and security of the sheriff or collector" of the public revenue,

and to appoint two of their own body to settle with such sheriff or collector, and report such settlement to the court. An act of 1796 (M. & B., 504) gave the county court cognizance of the settlement of the accounts of guardians and of admitting deeds to record. It also gave power "to grant ordinary license, and regulate and restrain ordinaries and tippling-houses;" to purchase land and cause public buildings to be erected, and "if the court of any county shall, at any time think fit, they are hereby authorized and empowered, at the charge of their county, to cause a ducking-stool to be built in such convenient place as they should direct." An act of 1810 (M. & B., 506), gave that court power to "lay a county levy covering the amount of claims against such county at the time of laying such levy, or which it was known would become due under engagements for public buildings by the time said levies would be collected and accounted for by the several sheriffs or collectors, adding a reasonable overplus for probable delinquents," &c.

By subsequent statutes county courts were empowered to establish roads and ferries, and to fix the rates of ferriage and the charges to be made by innkeepers. To these may be added acts giving the county court power to provide for the poor, and to take measures to prevent the spread of the small-pox, and many others of a similar character which it is not deemed necessary to refer to.

That the greater part, if not all, of the powers above referred to as having been conferred upon the county court are non-judicial in their nature, will not be disputed; but in no instance of which we are aware was the constitutionality of any of these acts assailed, and certainly none of them were ever pronounced by this court to be invalid.

But we are not left to infer from the enactment and long continued existence of statutes of a merely kindred nature to that now under discussion that it has through the whole legislative and judicial history of the state been regarded as competent to confer upon the county court powers not in their nature judicial, and especially powers relating to the revenue of the state.

We find that in 1819 (M. & B., 1373–76) the legislature enacted a law providing that the assessor should report in writing to the county court a list of all persons who had omitted to give in a list of their taxable property, or who should give a false, fraudulent, or imperfect list, and also providing for a proceeding in the county court similar to that provided for in the statute we are considering, and that the court should "proceed to hear and determine the same, and give judgment for a fine and triple tax, as directed by law, *and determine the value whereon to fix the triple tax;*" and further, that "the court, by the report of the commissioner, oath of the party, or other competent evidence, might proceed to ascertain the articles of taxable property belonging to such delinquent or delinquents, and the value thereof." The act also provided that a person who had failed to list his property might, although not proceeded against, list it with the county court, and that the sheriff or a private person might report any delinquent to the county court, and that the court should ascertain the articles of taxable property belonging to such delinquent, and the value thereof, and should cause to be certified to the sheriff or collector and the Auditor a true list of all taxable property given in to the court.

This act continued in force until it was superseded by the Revised Statutes, enacted after the adoption of the

present constitution, and its main features were re-adopted, or rather continued in force, in sections 20 to — (inclusive), of article 6, chapter 83.

An act approved February 28, 1862 (Myers' Supp., 4), contains similar provisions, so far as the jurisdiction and powers of the county court are concerned, that were contained in the act of 1819.

Under that act the case of McAllister v. Commonwealth (6 Bush, 581) arose. No question of the constitutionality of the act was raised; but the court, while reversing the judgment of the county court, remanded the case, with directions to correct certain specified errors, for which alone the judgment was reversed, thus recognizing, tacitly at least, the constitutionality of the provision conferring upon the county court power to assess the property of delinquents for taxation.

Whatever doubt we might otherwise have of the power of the legislature to confer upon the county court powers which are not judicial, must yield to the authority of the long continued practical construction to be found in the statute to which we have referred, and which have been acquiesced in by the bar and all departments of government for more than three quarters of a century.

Since some of these statutes were enacted, the constitution has been twice amended and re-adopted. The conventions must be presumed to have been well acquainted with the fact that these non-judicial powers had been conferred by various acts, and were being exercised by the county courts, and the re-adoption of the first article in the very words of the former constitutions was a virtual recognition of the validity of the statutes by which these powers had been, from time to time, conferred.

But the act must be held unconstitutional because its subject is not expressed in the title.

It is entitled, "An act to amend article three of chapter five of the General Statutes."

Chapter five relates exclusively to attorneys, and article three relates only to county attorneys.

The design of that provision of the constitution which requires that the subject of each act shall be expressed in the title, is to prevent the use of deceptive titles as a cover for vicious legislation, by enabling members of the general assembly to form such opinion of the nature of a bill from merely hearing it read by its title.

The title of the act under consideration can only be regarded as sufficient, even for the purpose of an amendment germain to the article mentioned in the title, by supposing the members were so well acquainted with the several chapters and the subject of each, that they could, from the simple mention of the number of the article and chapter, know the subject of that particular article.

But assuming that the title would have been sufficient, if the act had been restricted to matters germain to the article mentioned, the act must still be condemned.

The subject of the act is revenue and taxation, and not county attorneys. The duties imposed by it upon county attorneys are merely incidental to the main purpose, which was to provide additional means for the assessment of property and the collection of taxes. No one would contend that the act was valid if it were entitled "An act relating to county attorneys."

Such a title would not only fail to give even an intimation of the subject of the act, but, on the contrary, would be well calculated, though not so well as the title chosen, to

Pennington v. Woolfolk, &c.

conceal from the members of the General Assembly the real subject of the act. If the title was understood at all, the only impression it could have conveyed to the mind of the legislators was, that the act related to county attorneys, and it could by no possibility have been understood to be an act relating to the assessment of property by the county court, and the act must be held void; and as without it there is nothing to give the county court jurisdiction of the proceeding against the appellant, the court below erred in sustaining the demurrer to the petition.

Judgment reversed, and cause remanded, with directions to overrule the demurrer.

To a petition for a rehearing—

JUDGE HARGIS DELIVERED THE FOLLOWING RESPONSE:

The Code of Practice, section 479, says: "The writ of prohibition is an order of the circuit court to an inferior court of limited jurisdiction, prohibiting it from proceeding in a matter out of its jurisdiction."

Before the passage of the act of February 23, 1874, which is unconstitutional and void, the county court had no jurisdiction over the subject of that act; and the void act could not create any jurisdiction for the county court.

Therefore, as the county court was proceeding in a matter out of its jurisdiction, the proper remedy was by writ of prohibition.

The case of Arnold v. Shields, 5 Dana, sustains this view.

It is true that it is said in that case:

"If the statute be unconstitutional, that fact does not show that the magistrate had no jurisdiction over the suit, but would prove only that his judgment was erroneous;" but this was said in explication of the other important point

in that case, to-wit: That the magistrate had jurisdiction to decide whether the demands were legal or void, even if the act of 1836 were unconstitutional, or had never been enacted.

Hence, it is clear that the magistrate's jurisdiction did not *depend* upon the act of 1836; and his judgment as to its constitutionality being simply erroneous, was subject to revision by appeal only.

But the court also said:

"If the act of 1836 be unconstitutional, and therefore void; and if, also, the magistrate would not, independently of that statute, have had jurisdiction to decide on a demand for fifty dollars claimed as a penalty due from the defendants to the plaintiff in the warrant, *there could be no doubt that he would have had no jurisdiction, because his only authority would have been a void statute, which could confer no power.*"

The facts of this case, and want of jurisdiction of the county court, without the aid of the void act of February 23, 1874, bring it within the reasoning of. this quotation.

Petition overruled.