CASE 69—PETITION EQUITY—DECEMBER 2.

## Baldwin v. Shine, Presiding Judge, &c.

APPEAL FROM KENTON CIRCUIT COURT.

1. A COURT OF EQUITY MAY ENJOIN NOT ONLY THE COLLECTION OF AN ILLEGAL TAX, BUT ALSO A PROPOSED ILLEGAL ASSESSMENT, final in its character, as where the county judge is proceeding to assess property under an information filed by the Auditor's agent.

2. FAILURE OF TRUSTEE TO LIST PROPERTY.—The owner or possessor of property can not escape taxation upon it. either because the assessor fails to call upon him for his list, or because he parts with the property before he is proceeded against, but after the time when, under the statute, the liability becomes fixed.

   *An administrator who has failed to list the trust estate* may be required to do so after he has settled the trust, and been discharged from it.

3. EVIDENCES OF INDEBTEDNESS BELONGING TO NON-RESIDENTS HAVE NO ACTUAL SITUS HERE, and must be treated as located with the non-resident owner; but the "owner" is the person in whom the title, either absolute or qualified, is vested; and, therefore, as the personal estate of a decedent is annexed to the person of the administrator, evidences of

Baldwin v. Shine, Presiding Judge, &c.

indebtedness belonging to the estate have an actual *situs* in this State if the administrator resides here, *his* residence, and not that of the *distributees*, determining the *situs*.

4. THE COUNTY JUDGE, IN ASSESSING PROPERTY FOR TAXATION, acts ministerially, and not judicially; and, therefore, the dismissal of one information filed by the Auditor's agent is no bar to a second filed for the same purpose.

5. THE ASSESSING OFFICER. IN ARRIVING AT A PERSON'S "SURPLUS," under what is known as the equalization law, is not bound to accept the tax-payer's statement as conclusive of it.

W. LINDSAY FOR APPELLANT.

1. Evidences of indebtedness can not be taxed in this State when due to or owned by a non-resident. (Commonwealth v. Hays, 8 B. Mon., 2; Evansville v. Hall, 14 Ind., 27; 15 Wall., 302; 33 Iowa, 376.)

2. Baldwin's administration in Kentucky was ancillary to that of the Pendletons in Ohio, and even if Baldwin took the legal title to evidences of indebtedness left in the State of Ohio and never brought to Kentucky, he took it jointly with the Pendletons, and this partition of the legal title did not change the *situs* of this intangible property so as to subject it to taxation in Kentucky.

3. The order of the Kenton county court discharging Baldwin from the execution of the trust, is not to be treated as a mere idle act.     (Burkaloo v. Emerick, 18 Ohio, 268.)

4. An injunction will lie to restrain the illegal assessment of a tax in a proceeding like this in a county court, since the assessment of taxes is held, in this State, to be a ministerial proceeding, and relief can not be had by appeal.

    As to the reasons why assessments will not be enjoined in other States, see Cooley on Taxation, p. 540; Western R. Co. v. Nolan, 48 N. Y., 513.

5. The rule that the collection of a personal tax will not be enjoined, because the remedy by action at law against the collecting officer is complete, does not prevail in Kentucky, and ought not to prevail anywhere.     (Cooley on Taxation, p. 539; 40 Ill., 388; 18 Wis., 270; 22 Ind., 262; 14 Iowa, 38; 74 Pa. St., 252; Gates v. Barrett, 79 Ky., 295.)

6. The case presented is not that of an irregular proceeding to make an unauthorized assessment, the assessing officer having deliberately refused to recognize the binding effect of a former determination by the court of which he is presiding judge that the property was not subject to be assessed against Baldwin, and, without setting aside the former order, proceeded to nullify it.

7. Neither the assessor nor the county court can hear other evidence touching the surplus under the equalization law, than the tax-payer's

statements until the tax-payer shall have been convicted of refusing, on demand, to give his list, or shall have given a false or fraudulent list. (Gen. Stats., chap. 92, art. 1, secs. 5 and 6, and art. 5, secs. 20, 22 and 25; Auditor's Agent Act, Bullitt & Feland's Statutes, pages 753 and 754.)

8. Whenever the officer making the final assessment undertakes to go beyond his jurisdiction, or to fix valuations through prejudice or a reckless disregard of duty, in opposition to what must necessarily be the judgment of all persons of reflection, it is the duty of the courts to interfere to protect tax-payers against the consequences of his acts. (Chicago, B. & Q. Co. v. Cole. 75 Ill., 591.)

The facts of this case bring it within the foregoing rule.

9. Where the *consequences* of a threatened act are clearly within the control of the chancellor, the *act itself* must be.

O'HARA & BRYAN and JOHN W. STEVENSON on same side.

1. A court of equity has power to enjoin the collection of a tax· by a county court upon property not taxable. (High on Injunctions, secs. 796-801; Covington City Nat. Bank v. City of Covington, 21 Fed. Rep., p. 491; Pelton v. National Bank, 101 U. S., 143; Cummings v. National Bank, 101 U. S., 153; Bullock v. Curry, 2 Met., 171; Applegate v. Ernst, 3 Bush, 648; L. & N. R. R. Co. v. Warren County Court, 5 Bush, 243; Judge of Campbell Court v. Taylor, &c., 8 Bush, 206; Gates v. Barrett, 79 Ky., 295.)

2. Judge Shine had no power to investigate the second·information, and should promptly have dismissed it, as it was *res adjudicata*, the judgment dismissing the first information never having been set aside or reversed. (Roe v. Duchess of Kingston, 20 State Trials, 538, cited in 2 Smith's Leading Cases, 5 American Cases, 667; Laurence v. Engleby, 24 Vt., 42; Campbell v. Gordon, 6 Cranch, 182; Stark v. Chesapeake Ins. Co., 7 Cranch, 261; McCarthy v. Marsh, 1 Selden, 261; Towles v. Commonwealth, 7 Leigh., 743; Murray, &c., v. Oliver. 3 B. Mon., 1; Cotton v. Taylor, 4 B. Mon., 357; Graham v. Luckett 6 B. Mon., 146; Lexington and Harrodsburg Turnpike Co. v. McMurthy, 6 B. M., 214; Newport and Cincinnati Bridge Co. v. Douglass, Trustee, 12 Bush, 716; Clear Water v. Meredith, 1 Wall., 43; Durant v. Essex Co., 7 Wallace, 107; Aurora City v. West, 7 Wallace, 87; Madison County Court v. Richmond, Irvine & Three Forks R. R., 80 Ky., 26, 27.)

3 The acts of the county court in Kentucky may, upon the same subject, be under one state of fact and law judicial, while under another it may be ministerial. (Murray and Wife v. Oliver, 3 B. Mon., 1; Cotton v. Taylor. 4 B. Mon., 357; Graham v. Luckett, 6 B. M., 146; Lexington and Harrodsburg Turnpike Co. v. McMurthy, 6 B. M. 214; Piatt v. Alloway, 2 Bibb, 554; Isaacs v. Taylor, 3 Dana, 600.)

Baldwin v. Shine, Presiding Judge, &c.

4. The judgment of the county court in listing the property of a delinquent tax-payer may be judicial, as it was in this case. (McAllister v. Commonwealth, 6 Bush, 581.)

The case of Pennington v. Woolfolk, 79 Ky., 14, decides merely that the county court is clothed with both judicial and ministerial powers, but does not decide when its action is judicial and when ministerial.

5. The county judge erred in refusing to allow the affidavit of the appellant to be filed. The court had no power, under this proceeding, to list property of any citizen where the debts, upon a *prima facie* showing, exceeded the assets of the person proposed to be assessed. (Gen. Stats., chap. 92, art. 1, sec. 5.)

6. The property of a non-resident can not be taxed unless it has an *actual situs* within the State, so as to be under the protection of the law. (Cooley on Taxation, 14.)

7. Notes, bonds, accounts, &c., in the hands of the Kentucky administrator of a non-resident decedent who never resided at any time in this State, and whose estate has been administered upon at his domicile, were never intended to be included in section 5 of article 1, chapter 92, of the General Statutes, as subject to assessment under the equalization law.

8. As appellant had finally settled his accounts as administrator, and fully distributed the assets in his hands, he was not liable to be proceeded against as a delinquent tax-payer. (Young v. Duhme & Co., 4 Met., 242; Fowler v. Sharp, 15 Johns., 323.)

9. As appellant had never been notified, by any assessor or other taxing officer of the Commonwealth, that he was expected or required to pay tax upon the assets of Bowler's estate in his hands, he was authorized to assume that there was no claim against him for the taxes now demanded. (Hutchcraft's Adm'r v. Tilford, 5 Dana, 353; Lee v. Commonwealth, 6 Dana, 311; Vance v. Commonwealth, 3 Bush, 465.)

10. It is the imposition and assessment of the tax which creates the legal obligation to pay, and until such actual assessment and imposition no citizen is liable for the tax. (Dugan v. Baltimore 6 Harris & Johnson, 499; Lane v. Oregon, 7 Wallace, 79, 80, and authorities cited; Cooley on Taxation, p. 14, and authorities cited.)

11. All remedies for the collection and enforcement of taxes must be *strictly pursued.* (Campbell County v. Taylor, 8 Bush, 206; Bowling Green & Madisonville R. R. Co. v. Warren County, 10 Bush, 724; Vance v. Commonwealth, 3 Bush, 466.)

12. All taxation must relate to one of three subjects: persons, property and business; and the subject must be within the jurisdiction of the State. (State Tax on Foreign Bonds, 15 Wall., 319.)

13. The allegations of the petition filed by Baldwin for an injunction bring him within the scope of *equitable* relief. (Osburn v. Bank of

United States, 9 Wheaton, 735; Foote v. Linet, 5 McLean, 616; Drake
v. Philips, 40 Ill., 388; Riley v. Union Tel. Co., 47 Ind., 511; Cooley
on Taxation, 539; Bull v. Read, 13 Grat., 78; Ramsey v. Hogan, 76.
Ill., 432; Cooley on Taxation, 546.)

H. P. WHITAKER for appellee.

1. Where a person is resident within a State, his personal property, in con-
templation of law, accompanies him, and he may be required to pay
tax upon it wherever it is situated· and property held in trust should
be assessed to the trustee where he resides. (Cooley on Taxation,
pages 14, 15, 43, 269, 270 and 271.)

2. Appellant's power over the personal estate of his intestate was not im-
paired or abridged, or in any way affected, by a previous grant of
administration in another State. (Cosby, Adm'r, v. Gilchrist, 7 Dana,
207; Henderson; Adm'r, v. Clark, 4 Litt., 277.)

3. Personal property of a deceased person vests in his administrator on his
appointment by relation to the time of the death. (Wanson v. Soward,
23 Am. Dec., 691.)

4. The administrator has the legal right to take into his custody for ad-
ministration all the assets of the intestate. (Cook v. Burton's Adm'r,
5 Bush, 64.)

5. It is immaterial that there is no law authorizing an administrator to
assess and pay taxes by name. He is included under the expression,
"all persons." (Louisville & Nash. R. R. Co. v. Commonwealth, 1
Bush, 250.)

6. The law governing taxation for revenue goes direct to the property.
regardless of the owner of it, and makes the person in *possession* of
personal property responsible for the tax. (Gen. Stats., chap. 92, art.
4, paragraphs 4, 11 and 13; Commonwealth v. W. A. Gaines & Co.,
Sept. Term, 1882, 4 Ky. Law Rep.)

7. The fact that appellant has made a settlement as administrator, and
distributed the fund in his hands, does not relieve him from the tax.
The person owning or possessing property on the 10th day of January
in any year remains bound for the tax for that year, although he may
have parted with the title. (Gen. Stats., chap. 92, art. 4, par. 11;
Auditor's Agent Act, Gen. Stats., p. 753.)

8. Appellant can not plead as a defense that he was not called upon by
the assessors. (Gen. Stats., chap. 92, art. 5, par. 26.)

9. The assessment of property by the county court for taxation is a minis-
terial and not a judicial act. and, therefore, appellant can not plead
the dismissal of the first information as a bar to the second. (Pen-
nington v. Woolfolk, 79 Ky., 14.)

10. The appellant can not, in any event, ask the interposition of a court
of equity until he has exhausted his remedy before the county court.
(High on Injunction, page 21, paragraphs 30 and 31; Hart v. Mar-

shall, 4 Minn., 294; Brown's Appeal, 66 Pa. St., 155; Livingston v. Hollenbeck, 4 Barb., 9; Clinton, &c., Appeal, 56 Pa. St., 315; O'Neal v. Virginia, &c., 18 Md., 1; Howard v. Buffalo, 14 N. Y., 534; Mayor v. Meserole, 26 Wend., 132.)

11. Equity will not interfere to restrain a tax which is illegal or void, merely because of its illegality. (High on Injunction, p. 195, par. 354; *Ibid.*, p. 197, par. 355; Chicago, &c., v. Frany, 22 Ill., 34; Cooley on Taxation, pp. 536, 537 and 538; Durant v. Eaton, 98 Mass., 469; Whiting v. Boston, 106 Mass., 89; Rockingham Savings Bank v. Portsmouth, 62 N. H., 17; Ritter v. Parker, 12 Col., 298; Williams v. Detroit, 2 Mich., 560; Green v. Mumford, 5 R. I., 492; McCay v. Chillicothe, 3 Ohio, 370; Sayre v. Tompkins, 23 Mo., 423; 46 Mo., 394; Dodd v. Hartford, 25 Conn., 232; High on Injunction, pages 201-2, par. 361; *Ibid.*, p. 204, par. 365; LeRoy v. New York, 4 Johnson's Ch., 352.)

12. Where the general power to assess exists, the remedy for illegal taxation is by appeal; if no appeal be given, the judgment of the tax officers can not be revised. (Clinton School Districts Appeal, 56 Pa. St, p. 315.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

Robert B. Bowler, of Hamilton county, Ohio, died intestate on July 4, 1864, being then the owner of a large estate in both that and this State. Administration was granted in the former State on July 15, 1864. There lived also his widow and children. The estate in Kentucky, aside from railroad stock, upon which taxes were paid by the railroad company direct into the State Treasury, consisted altogether of notes and bonds. It was deemed expedient to have administration in this State also; and the appellant, Eli C. Baldwin, a friend of the family, was induced to remove from Ohio to Kentucky and undertake the trust. He qualified as the Kentucky administrator in the Kenton county court on February 13, 1865.

Appraisers of the estate were then appointed, who appraised the evidences of debt, exhibited to them by Baldwin, at nearly six hundred thousand dollars. He

also signed the appraisement, thus making it his inventory.   He continued to act as such representative until January 21, 1882.. During this period of nearly seventeen years, the estate in his hands of never less than $400,000, and amounting during some years to from one to two millions, was never assessed by him, and, so far as this record shows, was never assessed elsewhere. Upon the day last named he made a final settlement of his accounts in the Kenton county court, exhibiting the balance due the Ohio distributees ; they, under the order of court, received their distributive portions ; the court adjudged the estate as fully administered ; and, upon the confirmation of the settlement, ordered that "E. C. Baldwin be discharged from any further consideration of said trust."   After all this had occurred, and on July 7, 1882, the Auditor's agent filed, in the Kenton county court, an information against Baldwin as the administrator of Bowler, in which it was stated that from 1865 to 1882, inclusive, the latter had in his hands each year a certain amount (naming it and the year) of assets, which were subject to taxation under the revenue' laws of this State. He was thereupon cited by summons to appear and list it.   He filed a response, setting up his settlement ; the distribution and his discharge from the trust ; also that there had never been in his hands at any time a surplus of assets over the indebtedness, or any property subject to taxation ; that Bowler died domiciled in Ohio, where administration was first granted, and that the respondent had never been called upon by the assessor or any other officer to list any property in his hands belonging to the decedent.   A reply was filed, and upon hearing

the county judge, on September 2, 1882, dismissed the information. Shortly thereafter, the agent of the Auditor filed a second information, identical with the first —*totidem verbis*—and the appellant, by his response, relied upon the same defenses as before, with the additional one, that the former dismissal upon the merits was a bar to the proceeding, and that the matter was *res judicata*. A new county judge had now qualified, and upon the hearing he, on April 18, 1883, ordered "that Eli C. Baldwin, as administrator of Robert B. Bowler, be required to list for taxation the property held by him as administrator aforesaid, for the years mentioned in the information, and that defendant pay the costs of this action." In response the appellant tendered his affidavit, stating, in substance, that the property of the decedent in his hands during each of the years named in the information consisted entirely of notes, bonds and stocks; and that during the entire period the estate was indebted in a sum greater than the value of the entire personalty, excepting the railroad stock, upon which taxes were paid directly to the State treasurer; and that as, under the revenue law then in force, only the surplus left after deducting the indebtedness was taxable in such a case, he was not subject to assessment. Objection was made to its being filed; witnesses were ordered to be summoned, and the court was proceeding to hear the matter, when further action was stayed by the institution of this suit enjoining the county judge and the Auditor's agent from proceeding further as to the proposed assessment. The action is based upon the grounds which were set up as defenses to the information; and the statements of the

petition must be regarded by us as true, as the injunction was dissolved, upon motion, before answer, which was equivalent to a demurrer to the petition.

The question arises *in limine* whether the remedy by injunction will lie. In many of the States equity will not enjoin even the collection of an illegal tax; and much less an assessment, because the assessor is regarded as a *quasi* judicial officer. It is said that public policy, which will not brook delay in the public business, requires this rule.

It seems to us, however, that the evils flowing from its enforcement overbalance this consideration. It is an object of equity to foresee and prevent wrong. One of its principal offices is to avoid multiplicity of suits and circuity of action. By this rule the tax-payer is left to sue the collecting officer. This is unjust to both. It produces expensive litigation between two innocent parties, one of them being involved in it by reason of an honest effort in official duty. The courts of Illinois, Indiana, Pennsylvania, and some other States, including this one, have discarded this rule, and hold that a court of equity may enjoin the collection of an illegal tax. (Lou. & Nashville R. Co. v. Warren Co. Court, 5 Bush, 243; Gates v. Barrett, 79 Ky. Rep., 295.)

This being so, why is it not equally proper, in view of the aims of equity, to extend the rule to a proposed illegal assessment, final in its character, as this one would be? It is illogical to say that the chancellor can control the consequences, but not the act productive of them; or that he can not arrest the act, but may lay his hand upon those who attempt to carry it to its necessary results. An illegal assessment produces in-

jury by creating a *prima facie* claim.    Each leads to the same result; and surely one is not required to wait for the infliction of an injury before asking equitable relief.    Of course this rule does not apply to an ordinary assessment, not final in its character, where the party may apply to the board of supervisors or the county judge for relief.

The next inquiry is, whether the appellant, upon the face of his petition, is entitled to it.    He bases his claim to it upon three grounds.    First.  His settlement of the trust, and his discharge from it before the institution of any proceedings against him.    Second.  The assets being mere indebtedness, had no actual *situs*, and must be treated as constructively located with the owners, and at their domicile ; and the Bowler heirs being non-residents, the estate was not subject to taxation in Kentucky.    Third.  The judgment upon the first information is a bar to all further proceedings.

The general rule is, that all property is taxable.    If exempt, it is an exception.

Section 11, article 5, chapter 92, of the General Statutes, provides: "All taxable estate shall be valued as of the 10th day of January in the year listed, and the person owning or possessing the same on that day shall list it with the assessor, and remain bound for the tax, notwithstanding *he may have sold or parted with the same.*"

The assessment is made as of a certain day in each year.    The liability is fixed as of that day, and the owner or possessor of the property upon that day is bound for the tax, although he may subsequently part with it.    While the law contemplates that the owner

will be called upon by the assessing officer for his list, and makes it the duty of the latter to do so, yet it equally contemplates that all property liable to taxation shall be assessed.

Section 26, article 5, chapter 92, of the General Stat utes, provides : " Any person who has failed to give in his list of taxable property because he was not called upon by the assessor may, after the assessor has returned his tax book, list the same with the county court clerk at any time before the first day of October, who, on taking the same, shall be governed by the law regulating the duty of the assessor."

It is manifest from these statutory provisions that it was not intended that property should escape taxation by the government which protects it, either because the assessor fails to call upon the owner or possessor for his list, or because the latter parts with it before he is proceeded against, but after the time when the liability becomes fixed. It is true that debts have no place independent of the domicile of the owner. While specific articles of personal property permanently located in this State, and belonging to non-residents, may be listed even to the possessor, yet evidences of indebtedness have no actual *situs* here, and must be treated as located with the non-resident owner; but that case is not this one. The word "owner" in the statute refers to the person in whom the title is vested, either absolute or qualified. Here the estate was taken in charge by the Kentucky administrator; *the legal title was in him;* the estate followed him, and was annexed to his person, thereby having an actual *situs* in this State, by the law of which it was protected. Moreover, it was

under the charge of, and had to be distributed through, a court of this State. These facts clearly show that the second ground of complaint is untenable.

It is earnestly urged, however, that the action of a county judge in assessing for taxation is judicial, and not ministerial; and that the dismissal of the first information was a bar to any further proceeding. If this be true, then this suit can not be maintained. The county court has the power to make an assessment. If it acts judicially in so doing, then it may be said that it had jurisdiction to hear the second information; and we, therefore, have a case where one court is asked to enjoin the action of another as to a matter over which it has jurisdiction. Relief from improper judicial action should be sought through the channel of an appeal or *certiorari*, or writ of prohibition.

The remedy now sought seems to concede that the county judge was acting as a ministerial officer. If so, then his action upon the first information is not a bar to the second one. The inquiry arises, is an assessment by him an act of a judicial nature?

The assessor must necessarily use some judgment in making assessments, as is the case, to a greater or less degree, in all ministerial action. It is well settled in this State, however, that the act of an assessor is a mere ministerial one; and yet what more does the county court do in making an assessment than the assessor?

By our State Constitution, the powers of government are legislative, executive and judicial, making three distinct departments; and neither can exercise any power belonging to the other, save in the instances

permitted by that instrument. It classes the county court as a part of the judiciary; but this power has repeatedly and for a long time recognized the right of the county court to perform ministerial duties. This view has also received legislative sanction; and may now, by reason of uniform practical construction, dating from the formation of our State government, be regarded as beyond question.

Numerous statutes may be found conferring the power to perform such non-judicial duties, which were enacted prior to the adoption of our present Constitution. Its framers undoubtedly knew this fact; but yet made no change, thereby virtually recognizing their validity. The power to impose taxes can not be conferred upon a tribunal which has judicial powers alone; neither is their apportionment or assessment a judicial power. This is well settled in this State. Why, then, should the action of a county court, which may perform both judicial and ministerial duties, be regarded as judicial, when, for the purpose of compelling all property to bear its proportionate part of the public burden, and to catch delinquents, it is required merely to perform what the assessor should have done? Its powers being of a mixed character, it is sometimes difficult to tell upon which side of the often shadowy line its acts should be ranged. Its action may, under one state of fact and law, be judicial, while under another it may be ministerial; but where, as in this instance, its office is merely to supply the omission of a ministerial officer, we fail to see any good reason why its action should be regarded as judicial. These views are supported by the case of

Pennington v. Woolfolk, &c., 79 Ky. Rep., 13 ; and we conclude that the proceedings upon th﹥ first information were not a bar to the second one.

We do not construe the order of the county court made on April 18, 1883, as determining the liability to taxation of the assets which had come to the appellant's hands as administrator ; or that he should list them without any deduction for indebtedness, if such existed ; but only that he was required to make a list. The county judge appears to have so regarded it, because he was proceeding to hear the matter when further proceedings were enjoined.   The record does not show that he rejected the affidavit of the appellant ; but only that it was tendered and objected to by the representative of the State.   Necessarily the assessing officer, in acting under what is known as the equalization law, and in arriving at a person's "surplus" over his indebtedness, must often accept the tax-payer's statement as conclusive of it.   Often he can not otherwise arrive at it ; but he is not bound to do so.   It would be unreasonable to so suppose in a case where he had reasonable ground to believe that the party was making a false assessment.  The law intended that he should avail himself of all the means within his power to get at the facts of the case ; and this the county court was endeavoring to do when it was prevented from proceeding by this action.

Inasmuch as the petition in this case avers that, aside from the railroad stock, the estate of Bowler during the entire period covered by the information was indebted in an amount larger than its assets, we should, if we understood the order of the county court as perempto-

rily ordering the appellant to list the assets that came to his hands, without regard to any indebtedness, reverse the judgment below, with direction to the chancellor to order the county court to hear the question, both as to assets and indebtedness; but we think the proceedings show that it was merely proceeding to do so when enjoined; and the judgment is, therefore, affirmed.