CASE 42.—INDICTMENT AGAINST J. W. HENRY AND OTH-
ERS FOR MALFEASANCE IN OFFICE.—June 26.

# Henry, etc., v. Commonwealth

Appeal from Montgomery Circuit Court.

·A. W. YOUNG, Circuit Judge.

## Defendants convicted, and appeal.—Reversed.

1. Officers—De Facto Officers—Acting Under Invalid Election.—
   A person assuming the duties of supervisor of roads by vir-
   tue of a void election by the fiscal court, and discharging the
   duties of the office with the acquiescence of the court, even
   after the office had been declared vacant and another su-
   :pervisor elected, is an officer de facto. '

2. Counties—County Board—Criminal Responsibility of Members.
   —The members of a county fiscal court in allowing the
   claim of a de facto supervisor of roads against the county
   acted in a judicial or quasi judicial capacity, and were not
   criminally liable for an error of judgment, departure from
   sound policy or an act contrary to law, where they acted
   honestly and with good motives.

C. C. TURNER, HAZELRIGG, CHENAULT & HAZELRIGG,
JNO. E. COOPER and R. H. WINN for appellants.

N. B. HAYS, Attorney General, C. H. MORRIS and C. F. THOM-
AS for Commonwealth.

See citations of authorities for both appellant and appellee in
case of Eubank v. Commonwealth in this volume.—Reporter.

OPINION OF THE COURT BY JUDGE SETTLE.—Revers-
ing.

The appellants, J. W. Henry, T. N. Perry, and C. L.
Dean, together with J. H. Schultz, all justices of the

peace in and for Montgomery county and members of its fiscal court, were indicted by the grand jury of that county for malfeasance in office. Later the appellants were tried in the circuit court for the offense in question, and each found guilty by verdict of the jury; the punishment of the appellants Henry and Dean being fixed at a fine of $350 each, and that of appellant Perry at $100. The court entered judgment against appellants in favor of the Commonwealth for these fines, and, in addition, declared their right to the offices held by them, respectively, forfeited, and the offices vacant. Appellants thereupon applied for and were refused a new trial, following which they superseded the judgment and prosecuted this appeal.

The charge of malfeasance made in the indictment was based upon the act of each of the appellants in voting in their official capacity as members of the fiscal court to allow and pay out of the funds of Montgomery county a claim of $600 in favor of one W. W. Eubank, demanded by the latter as a year's salary for services alleged to have been performed by him as supervisor of the roads and turnpikes of Montgomery county; it being alleged in the indictment that Eubank was not and had never been supervisor of the roads and turnpikes of the county, that he was not entitled to the salary claimed or any part thereof, and that these facts were known to appellants when they voted to allow and pay the salary. It was therefore charged in the indictment, argued on the trial in the court below, and is now contended that in voting to appropriate the money of Montgomery county to the payment of Eubank's claim appellants acted willfully, unlawfully, and corruptly, and, if so, they were guilty of malfeasance as charged. It appears from the record that Eubank and one Stokely were together

elected supervisors of the roads and turnpikes of Montgomery county by the fiscal court in April, 1904, for two years each, and that each of them immediately qualified by giving bond and taking the oath of office. At the same term of the court an order was entered dividing the county into two road districts. Eubank was given charge of the roads and turnpikes in one of these districts, and Stokely of the roads and turnpikes in the other. At the April term, 1905, of the fiscal court, Stokely resigned as supervisor of roads, and there was at the same time some talk among the members of the fiscal court about electing a supervisor of roads. Indeed, a resolution to that effect was offered, but not adopted, because the members of the court were advised by the county judge that the county could have but one supervisor of roads, and that, as Eubanks was still acting in that capacity and would continue to do so for another year, the election of another would be unauthorized. Thereupon the matter of electing a road supervisor was for the time being dropped. But at a regular term of the fiscal court held August 4, 1905, a resolution adopted by a majority vote of its members was entered of record declaring the office of road supervisor vacant. At a subsequent term of the fiscal court, which convened October 3, 1905, an election was held to fill the vacancy, and, a majority of the members of the court having voted for G. P. Douglass, he was declared duly elected supervisor of roads for Montgomery county for a term of two years. Douglass about two weeks later executed bond and duly qualified as such supervisor.

The action of the fiscal court on August 4, 1905, declaring a vacancy in the office of supervisor of roads, was doubtless superinduced by the opinion of

this court in the case of Boyd Co. v. Arthur, 118 Ky.
932, 82 S. W. 613, 26 Ky. L. R. 908, decided November
4, 1904, in which it was held that a county judge could
not be empowered by the fiscal court of a county to
perform the duties of road supervisor. In reaching
that conclusion this court in part said: ''The statutes
that we have referred to have the same end in view
when they forbid the members of the fiscal court being
interested in any contract or work, and in providing
that they may appoint one supervisor for the whole
county and exercise supervision over him.'' In the
case of Fleming County Fiscal Court v. Howe, County
Judge, etc., 121 Ky. 478, 89 S. W. 225, 28 Ky. Law
Rep. 458, decided November 18, 1905, and therefore
after the Montgomery county fiscal court declared
that a vacancy existed in the office of road supervisor
for that county, and also after the election of Doug-
lass, the question of whether the fiscal court can elect
more than one supervisor of roads for the county was
for the first time presented to this court for decision.
The Fleming county fiscal court had elected six super-
visors of roads for that county. In that case this
court, after quoting and construing the statutes as to
the duties of the fiscal court in respect to the roads
and turnpikes of the county, said: ''Ky. St., 1903, sec-
tion 4313, empowers the fiscal court of any county
wherein the roads are worked by taxation, to appoint
a 'supervisor of roads in and for the county.' Section
4314 requires the supervisor to take an oath, and give
bond for the faithful performance of his duties. Sec-
tion 4315 prescribes his duties with great particu-
larity. Section 4344 permits the fiscal court to author-
ize the supervisor to appoint assistant supervisors to
aid him in the discharge of his duties, and section
4346 directs the fiscal court to fix and appropriate

money to pay a reasonable compensation to the supervisor annually and also to pay any assistant supervisor for his services. The statute in respect to turnpike and gravel roads (Act March 17, 1896; Acts 1896, p. 39, c. 27; Ky. St., 1903, section 4748a, subsecs. 1-16, inclusive) does not provide for the appointment of a supervisor, or mention such an officer, but it does declare that turnpike or gravel roads acquired or constructed by a county shall become public roads and be maintained and kept in repair by and through the fiscal court of the county, and that the fiscal court may provide for keeping them up as is directed and permitted under the 'general road law,' or it may adopt rules for otherwise maintaining them. The fiscal court seems to have attempted to follow both these plans in maintaining its turnpikes, for it adopted certain rules applicable to the turnpikes alone as provided by the statute in regard to turnpikes and gravel roads, but in appointing supervisors to take charge of and keep the turnpikes in order, it endeavored to follow the general road law without conforming to its requirements, for the statute as to public roads, known as the general road law, as before remarked, allows the appointment of but one supervisor of roads by the fiscal court, though, by order of that court, he (the supervisor) may appoint assistant supervisors. We know of no reason why the fiscal court may not maintain the turnpikes of the county under rules adopted for that purpose as provided by the statute as to turnpikes, and at the same time avail itself of the right conferred by the statute regarding other public roads to appoint a supervisor to take control of them. But, if it does so, it can appoint but one supervisor. The fiscal court is a court of limited jurisdiction. Its powers are defined by statute, and

must be exercised accordingly. It cannot create offices or appoint officers without statutory authority.''

In view of the conclusion expressed by this court in the case supra, it is patent that the election of Eubank by the fiscal court was void. But, conceding this to be true, was he not supervisor de facto until the office was declared vacant by the fiscal court August 4, 1905, and even after that time as long as his discharge of the duties of the office was acquiesced in by the fiscal court. "An officer de facto is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid so far as they involve the interests of the public and third persons, where duties of the office were exercised, first, without a known appointment or election, but under such circumstances of reputation or acquiescence as were calculated to induce people, without inquiry, to submit to or invoke his action supposing him to be the officer he assumed to be; second, under color of a known or valid appointment or election, but where the officer has failed to conform to some precedent, requirement, or condition, as to take an oath, give a bond, or the like; third, under color of a known election or appointment, void because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power of defect being unknown to the public; fourth, under color of an election, or appointment by or pursuant to a public unconstitutional law, before the same is adjudged to be such.'' Mechem on Public Officers, section 318. That Eubanks was not an usurper in attempting to perform the duties of the office in question after the alleged vacancy therein was

declared by the fiscal court was this day decided by this court in the case of Eubank v. Commonwealth, 126 Ky. ——, 103 S. W. 368, 31 Ky. Law Rep. 746. He certainly took possesison of the office in the beginning under and by virtue of the election at the hands of the fiscal court, which, though void, because that body was without power to elect him in conjunction with another to the one office, at least relieves him of the onus of having seized or intruded upon the office and assumed to exercise its functions without color of right. Not only did he undertake in good faith the performance of its duties, but, in electing both him and Stokely to the same office, permitting them to assume its functions and Eubank to continue in the office after its declaration of a vacancy therein and the election of Douglass thereto, the fiscal court, though laboring under a mistake as to the meaning of the staute creating the office, evidently acted in good faith. The appellant Dean was elected and appellants Henry and Perry re-elected—each from his own magisterial district—justices of the peace at the regular November election, 1905, for terms beginning the first Monday in January, 1906, and each of them duly qualified by giving bond and taking the oath of office December 18, 1905.

As before stated, the claim of $600 presented by Eubank to the fiscal court at its April term, 1906, was for salary alleged to be due him as road supervisor for the year ending January 1, 1906. Appellants and their associate, Schultz, who for some reason unexplained in the record was not tried, voted to allow his claim, and, as the four constituted a majority of the court, it was allowed. It now remains to be determined whether there was any evidence introduced upon the trial which conduced to prove that appellants or any of them in thus voting were actuated by

a corrupt motive. It is insisted for the common-
wealth that such proof is furnished by the facts that
appellants, before voting to allow Eubank's claim,
were advised that his election was void, for the fiscal
court had so declared in August, 1905, and confirmed
that declaration by electing a road supervisor in Octo-
ber following; and also because the county attorney,
while the claim was being considered by the fiscal
court, cited and read from the cases of Boyd
County v. Authur, and Fleming County Fiscal
Court v. Howe, supra, to show that the election of
Eubank was void, and from that premise argued that
his claim for salary was invalid, and should therefore
be rejected. The testimony referred to was, it is true,
made by the Commonwealth, but the inferences deduc-
ible therefrom do not necessarily prove a corrupt
motive on the part of any of the appellants in voting
to allow Eubank's claim. Certainly such inferences
do not as strongly tend to show a corrupt motive on
the part of appellants Henry and Perry in thus vot-
ing, as does their conduct, with respect to Eubank's
incumbency of the office of road supervisor, prove
their belief in the validity of his election, however
mistaken that belief; for, according to the evidence
appearing in the record, the appellants, especially
Henry and Perry, continued to believe him the lawful
incumbent of the office as long as he claimed the right
to remain in possession of it. As members of the
fiscal court, they, Henry and Perry, voted against the
order of that court of August 4, 1905, declaring the
office vacant, and also against filling the vacancy by
the election of his successor, Douglass, on October 3,
1905. It is apparent from the record that the claim of
Eubank was allowed after considerable discussion, in
which the county attorney, county judge, and nearly

all the magistrates composing the fiscal court took part; that the county attorney excepted to its allowance and took an appeal to the circuit court. However erroneous may have been the act af appellants in voting to allow it, they, as testified by the county judge, made the statement before the fiscal court, when the claim was being considered, that Eubank had done the work as supervisor, and he was entitled to his pay for it. Schultz, who, though jointly indicted with appellants, was introduced as a witness by the Commonwealth, testified that the appellant Perry out of court told him, in talking of the Eubank claim, "that it was right and ought to be allowed." Whatever may have been the legal effect of the order of August 4, 1905, it seems to be conceded that Eubank performed the duties of road supervisor from the beginning of the year, 1905, down to the time of the election of Douglass, and it also appears from the evidence that he, in some measure at least, continued to discharge its duties until the end of the year. It is but fair to presume that appellants as members of the fiscal court had opportunities to know what service he performed, and whether or not it extended over the period covered by his account presented to the fiscal court for allowance.

The county judge, who was presumably better informed of the law than were the magistrates composing the fiscal court, though of the opinion when Eubank's claim was allowed that he had never been legally elected road supervisor, nevertheless expressed a different opinion at the April term, 1905, when Stokely resigned, by then saying the election of another supervisor, as at that time proposed, would not be proper, for Eubank yet had a year to serve as the incumbent of the office. Is the fact that he

afterward changed his opinion and came to the conclusion that Eubank's election was void, to be taken as evidence that the county judge acted in bad faith in expressing either opinion? Surely not. Sinister or corrupt motives are not to be imputed to those charged with the performance of official duties, in the absence of evidence sufficiently strong to justify such inference. Especially is this true as to the acts of judicial officers. The law on this subject is well expressed in Roberson's Kentucky Criminal Law, section 814, as follows: "A judicial officer cannot be punished for judicial acts performed by him, however erroneous, on subjects within the scope of his authority and over which he has jurisdiction. But this rule does not hold good where he acts from some motive of malice, partiality, or corruption, or when he attempts to exercise authority where he has none, and assumes jurisdiction without any power. * * * A person serving in an official capacity in which he is called upon to exercise his own judgment or discretion is not criminally liable for his acts, unless he acts willfully, maliciously, or corruptly." 19 Am. & Eng. Ency. of Law (1st Ed.) 503; 2 Bishop, Crim. Law (7th Ed.) 980. In 1 Bishop, Criminal Law, section 460, it is said: "One serving in a judicial or other capacity, in which he is required to exercise a judgment of his own, is not punishable for a mere error therein, or for a mistake of law. His act to be cognizable criminally, or even civilly, must be willful and corrupt." In Throop on Public Officers, section 859, we find the law on the same subject thus stated: "The second class of exceptions relates to the nature and character of the particular functions with respect to which the offense of nonfeasance, misfeasance, or malfeasance was committed. It is well settled that a judicial

officer, from the highest to the lowest grade, is not punishable criminally for an honest error or mistake made by him in performing a judicial act of which he has jurisdiction. So also an officer exercising a quasi judicial power is not punishable for any honest mistake of judgment in the exercise of that power, but only for an abuse of his power in proceeding from a corrupt or other improper motive.'' Mechem on Public Officers, section 636. Neither a judicial or legislative officer is liable even in a civil action for damages for an erroneous act where in the exercise of a power he is vested with a discretion. Gregory v. Brown, 4 Bibb. 28, 7 Am. Dec. 731; Hollon v. Lilly, 100 Ky. 553, 18 Ky. Law Rep. 968, 38 S. W. 878. The magistrates of a county are by law ex officio members of the fiscal court. They are required to meet in a body to levy taxes and appropriate funds for the needs of the county. Such duties are quasi judicial and at the same time quasi legislative in character, and for error or mistake in their performance neither the magistrates nor the sureties in their official bonds are responsible in an action for damages. Commonwealth, for Use, etc., v. Kenneday, 118 Ky. 618, 82 S. W. 237, 26 Ky. Law Rep. 504; Mechem on Public Officers, sections 644-646; Cooley on Torts, 276; Pennington v. Woolfolk, 79 Ky. 16, 3 Ky. Law Rep. 42; McLean County v. Deposit Bank, 81 Ky. 254, 5 Ky. Law Rep. 97; Muhlenburg County, etc., v. Morehead, 46 S. W. 484, 20 Ky. Law Rep. 376; Fleming v. Dyer, etc., 47 S. W. 444, 20 Ky. Law Rep. 689. In Throop on Public Officers, section 540, we are told: ''The act of a board of supervisors is judicial when it allows or rejects an account against the county.'' In section 552 of the same work it is said: ''So it has been ruled in several cases that county commissioners, super-

visors, and other similar bodies, in deciding upon claims against the county, parish, or other municipality, act judicially." And again, in section 553, we are further told by the author: "Where in the exercise of a power an officer is vested with a discretion, his act is regarded as quasi judicial."

It is apparent from the foregoing authorities, and many others that might be cited, that appellants as members of the fiscal court acted in a judicial or quasi judicial capacity in voting to allow Eubank's claim. They, therefore, acted in the exercise of a legal discretion, and, this being true, although it be conceded that in voting to allow the claim in question they were guilty of an error in judgment, departure from sound policy, or that they acted contrary to law, it is not sufficient to subject them to indictment or punishment. In order to sustain a criminal prosecution against appellants for the act complained of, it must be shown either that the act involved palpable omission of a duty imperatively required of them by law, which they were without discretion to disregard, or that it amounted to a willful and corrupt abuse of such discretion. The testimony before us may be sufficient to show error in judgment on the part of appellants, and even a stubborn or unreasonable disregard of the arguments and advice of the county attorney to the effect that Eubank's claim should have been rejected, but it wholly fails to prove that, in voting to allow the claim, they acted dishonestly or from a corrupt motive. If the members of the fiscal court are to be proceeded against criminally or in a civil action for damages for mere mistakes in judgment, however hurtful to the public, they would undertake the performance of their official duties in

a timid and time-serving manner; if, indeed, they would undertake their performance at all.

The lower court should have given a peremptory instruction after the introduction of the evidence in behalf of the Commonwealth, directing the jury to find appellants not guilty, and, because of its failure to do so, the judgment is reversed, and cause remanded for a new trial and further proceedings consistent with the opinion.