GEORGE R. COOPER, Guardian,

*v.*

THE BOARD OF REVIEW OF MONTGOMERY COUNTY.

*Opinion filed February 17, 1904.*

1. TAXES—*benefit certificates are taxable though proofs of death have not been made.* Certificates of insurance in benefit societies are taxable as credits after the death of the person whose life is insured, notwithstanding proofs of death are not made by April 1 and the societies have sixty days in which to pay after proofs made.

2. SAME—*benefit certificates presumed to be worth their face value.* In assessing benefit certificates for taxation as credits, the certificates are presumed to be worth their face value.

AUDITOR'S certificate of appeal to review decision of board of review of Montgomery county.

The board of review of Montgomery county assessed appellant, as guardian, the sum of $4330.00 on a total cash value of personal property; and appellant claims that said property was exempt from taxation for the year 1903. Appellant objecting to the assessment, and claiming that the property was exempt from taxation, the board by its clerk thereupon certified a statement of the facts concerning said assessment to the Auditor of Public Accounts. The Auditor of Public Accounts, being satisfied that such property is liable to taxation, submits the question of its exemption from taxation to this court in accordance with the provisions of the fourth clause of section 35 of the Revenue law of 1898. (4 Starr & Cur. Ann. Stat. p. 1118.)

The facts certified are, that Dr. S. H. McLean, the father of Ben O. McLean, died at Lincoln in Logan county on or about the 18th day of March, 1903, intestate; that, at the time of his death, he held a policy of life insurance in the Modern Woodmen of America for the sum of $3000.00 payable to said son, Ben O. McLean; that he also held a policy of life insurance in the Court of Honor, in which the said Ben O. McLean was a beneficiary, to the amount of $1333.33; that each of the above insurance companies is a fraternal beneficiary society; that their manner of paying policies is by an assessment, levied upon the members of said society; that said Ben O. McLean is a minor of the age of seventeen years; that said George R. Cooper filed a petition in the county court of said county, asking to be appointed guardian of said Ben O. McLean, on March 23, 1903; that said petition states "that said minor has due him life insurance to the amount of about $4200.00; that said George R. Cooper was appointed guardian of said Ben O. McLean by the county court of Montgomery county on March 27, 1903, and duly qualified, and from thence hitherto has been acting as such guardian; that each of said policies of insurance required proof of death as a condition precedent to the payment thereof, and allowed sixty days in which to pay said policies; that, on the first of April, 1903, proofs of death had not been made under either of said policies, nor had any assessments been made on the members of said societies, or either of them, for the payment of either of said policies; that, on April 1, 1903, no money had been paid to said guardian under either of said policies, nor had he taken any steps whatever at that time to collect the same further than to be appointed guardian; that on May 9, 1903, said Cooper received, as such guardian, from the Court of Honor the sum of $1333.33, and on May 26, 1903, he received, as such guardian, from the Modern Woodman of America the sum of $3000.00.

LANE & COOPER, for appellant.

H. J. HAMLIN, Attorney General, for the People.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

Upon the certificate of facts, set forth in the statement preceding this opinion, the board of review predicated the right to make the assessment, and it is contended by George R. Cooper, guardian of Ben O. McLean, that the assessment is illegal and contrary to law.

The value of the two policies of insurance was assessed against the guardian as of the first day of April, 1903. "All property subject to taxation shall be listed by the person at the place and in the manner required by law, and assessed at the place and in the manner required by law with reference to the ownership, amount, kind and value on the first day of April in the year, for which the property is required to be listed, including all property purchased on that day. The owner of property on the first day of April in any year shall be liable for the taxes of that year." (4 Starr & Cur. Ann. Stat. p. 1110; sec. 8 of Revenue act of 1898).

The father of the minor, Ben O. McLean, had died early in March, 1903, and Cooper was appointed his guardian on March 27, 1903, and qualified on that date. Was the guardian the owner of the policies on the first day of April?

By the terms of the second clause of section 1 of the Revenue act all "credits" shall be assessed and taxed; and by the first clause of section 6 of the Revenue act, every person of full age and sound mind, being a resident of this State, is required to list all his "credits" and personal property for taxation. (3 Starr & Cur. Ann. Stat. —2d ed.—pp. 3398-3406). In the sixth clause of section 292 of the Revenue act "credits" are defined as follows: "Every claim or demand for money, labor, interest or

other valuable thing due or to become due, not including money on deposit." (3 Starr & Cur. Ann. Stat.—2d ed.— p. 3520). Undoubtedly, the claim of the guardian against the fraternal beneficiary societies, who issued the policies or certificates to Dr. S. H. McLean in his lifetime, comes within the statutory definition of "credits." It, therefore, follows that the claim was properly listed as the personal property of the guardian on April 1, 1903.

It is contended, however, on the part of the guardian, that a full and perfected claim for the amount due upon the certificates had no existence on April 1, 1903. The certificate of facts shows that each of said policies, or certificates of insurance, required proof of death as a condition precedent to the payment thereof, and also that each company had sixty days after the making of proof of death, in which to pay the amount of the policy. It also appears from the certificate of facts, that proofs of death had not been made under either of the policies on the first of April, 1903. It is claimed that the companies were not bound to pay the policies until proofs of death were submitted, and then not until sixty days had elapsed. The contention is, that no valid claim existed against either of the said companies until proofs of death were submitted and until the sixty days had passed, and that, therefore, the guardian was not the owner of any claim on the first day of April, 1903. The statutory definition of "credits" includes every claim or demand for money "due or to become due." The fact, that the claim for the insurance money against the companies was not due until after the lapse of sixty days, would make no difference in view of the fact that, under the statute, a claim for money "to become due" as well as one for money already due, is included within the definition of "credits." The certificate of facts states that Dr. McLean, to whom the policies were issued, had died, and the submission of proof of his death was an act to be performed by the guardian; and if the claim was one,

which was "to become due," it was such a claim as well because it had not matured on account of the delay in filing the proofs of death, as because the period of sixty days had not yet expired. If the claim had been merely one, which would be due in sixty days, it comes within the definition of "credits," which embraces claims "to become due," as well as claims "due;" and it would equally come within the definition, if it was not yet due because the proofs of death had not been made.

It is urged that the board of review could not determine what the value of the policies was on April 1, 1903, and, therefore, that their value should not be taxed. The policies were certainly evidence of claims of the beneficiaries, and what their value was was a question to be determined by the assessor, or the board of review. The value of the policies was fixed at their face value, or the amount due by their terms. This would appear to have been a correct mode of ascertaining their value, as on the 9th and 26th days of May, 1903, the companies paid the full amounts called for by their terms. In such cases, the policies will be presumed to be worth their face value. (*Wedgbury* v. *Cassell*, 164 Ill. 622).

It is furthermore contended that the money, with which the policies were to be paid, was in the hands of the companies, and that, therefore, they constituted a fund, which belonged to the companies and was taxable as the property of the companies. In support of this position the case of *Catholic Knights* v. *Board of Review*, 198 Ill. 441, is referred to, and relied upon. In the latter case it was held that a fund in the hands of the treasurer of a benefit society was properly assessed as the property of the society, although orders had before April 1 been issued against a portion of the fund to beneficiaries of deceased members; it being there said: "No part of the fund assessed had been paid out prior to April 1, and it then became liable to the tax in the hands of the treasurer of the institution, who was its lawful

custodian." Taking the ground, that the amount due upon the policies here in controversy was a fund, which belonged to the companies and was taxable on April 1, 1903, as the property of the companies, the objecting guardian contends that, if the claims are assessed against him as his property, there will be a double taxation of the same property. But there is no evidence here that the money was in the hands of the insurance companies on April 1, 1903. It appears from the certificate of facts, that the manner of paying their policies by these companies is by an assessment levied upon the members of the society, and that on April 1, 1903, no assessment had been made upon the members of either of the societies for the payment of either of said policies. As, therefore, the funds were not in the hands of the societies on April 1, 1903, they could not be taxed as property, belonging on that date to the societies or companies. If, therefore, the claims for the moneys due upon these policies are not taxed as the property of the objecting guardian, they will escape taxation altogether for the year 1903.

Counsel for the guardian refer us to no authority, supporting the conclusion that, because the money in the hands of the insurance companies was taxable, the ·evidences of indebtedness against the insurance companies could not be taxed. A debtor, who has money in his possession on April 1, is subject to assessment upon that money, and a creditor, who holds a note or other evidence of indebtedness against such debtor at the same time, is subject to assessment on that credit according to its value whether due or not.

We are, therefore, of the opinion that the action of the board of review in assessing these claims against the insurance companies, or societies, as being the property of the guardian on April 1, 1903, at their face value was correct; and the decision of the board is approved.

*Decision approved.*