O. B. TALLY, Treasurer of Woodbury County, v. JONATHAN W. BROWN, Appellant.

**Taxation of claim for loss on an insurance policy.** A claim on
1  an insurance policy for a loss, even though depending for its validity on the question of whether there had been a breach of the conditions of the policy on the part of the insured, and on his making proof of loss, is taxable under the statutes providing for the taxation of property due on contract or of a claim due or to become due for money, labor or other valuable thing; although the amount due had not been ascertained on the first of January following the loss, but was ascertained at the time of the assessment; and although the insurer had the right to rebuild under the policy; as the claim whether treated as a demand for money or for compensation by restoration of the property destroyed, is included within the language of the statute.

**Same:** ASSESSMENT OF PROPERTY: OMISSION BY ASSESSOR: REVIEW:
2  SUBSEQUENT ASSESSMENT. The assessor's determination that a claim or demand for money or property due, or to become due, the taxpayer, is not a final determination of the question of whether the same is assessable; but, although he may conclude that the claim is not assessable, still the board of review may assess the same as omitted property, or it may be assessed as omitted property by other taxing officers, as provided by statute.
Weaver and Evans, JJ., dissenting.

*Appeal from Woodbury District Court.*—Hon. F. R. Gaynor, Judge.

Saturday, March 12, 1910.

Appeal from judgment confirming an assessment of omitted property by the county treasurer.—*Affirmed.*

*Edwin J. Stason,* for appellant.

*Strong & Whitney,* for appellee.

Ladd, J.—A building on land of defendant was destroyed by fire December 23, 1904. It was insured in several companies, but the loss was not adjusted until January 5, 1905, when these companies and the insured agreed that he was entitled to the payment on the several policies of $25,250 in the aggregate within sixty days. Each of these policies contained the following paragraph:

This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deductions for depreciation however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality; and such ascertainment or estimate shall be made by the insured and this company, or, if they differ, then by appraisers, as hereinafter provided, and, the amount of loss or damage having been thus determined, the sum for which this company is liable pursuant to this policy shall be payable sixty days after due notice, ascertainment, estimate, and satisfactory proof of the loss have been received by this company in accordance with the terms of this policy. It shall be optional, however, with this company to take all, or any part, of the articles at such ascertained value, and also to repair, rebuild, or replace the property lost or damaged with other of like kind and qual-

ity within a reasonable time on giving notice, within thirty days after the receipt of the proof herein required, of its intention so to do; but there can be no abandonment to this company of the property described. . . . No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity, until after full compliance by the insured with the foregoing requirements, nor unless commenced within twelve months after the fire.

On January 1st then the validity of defendant's claims against the several companies depended on (1) whether there had been any breach in the conditions of the policies on the part of the assured; and (2) upon the making of necessary proofs of loss. And payment was contingent upon the exercise of the option to rebuild, and, in event this was not exercised, the extent of the damages for which they were liable was yet to be determined. Were these contingencies such as to relieve the claims for loss from assessment as property of the insured? The assessor omitted the claims, and the county treasurer assessed them as omitted property.

Under the laws of this state, personal property is "listed and assessed each year in the name of the owner thereof on the first day of January." *In re Estate of Kauffman,* 104 Iowa, 639. "All other property, real and personal, is subjected to taxation. . . . And credits including bank bills, government currency, property or labor due from solvent debtors on contract or judgment, mortgages or other like securities." Section 1308, Code. "The term credit, as used in this chapter, includes every claim or demand due or to become due for money, labor or other valuable thing . . . and all money or property of any kind secured by deed or . . . otherwise." Section 1309, Code. "Accounts, contracts for cash or labor . . . choses in action . . . shall be assessed as provided in this chapter." Section 1310, Code. These in con-

nection with other sections of the Code manifest the legislative purpose of taxing all property, not expressly excepted as exempt, and, in construing them, this design is not to be ignored. On the other hand, if the language quoted does not fairly include the claims on the policies as they existed January 1, 1905, this manifest intent of the lawmakers can not supply the omission of the language sufficiently comprehensive to include them. To be assessable, the liabilities on the policies must be construed to be "a claim or demand due or to become due for money, labor or other valuable thing," or "property or labor due from solvent debtors on contract" or "contracts for cash" or "choses in action." The word "due" as here employed does not have reference to the time of payment or the fulfillment of an obligation, but is synonymous with "owing." See *Jasper v. District Township Sheridan,* 47 Iowa, 183; *Barto v. Stewart,* 21 Wash. 605 (59 Pac. 480); *United States v. Bank of N. C.,* 31 U. S. 29 (8 L. Ed. 308).

Were these policies claims or demands in the hands of defendant? The words "debt" and "demand" are of kindred meaning, but "demand" is of more comprehensive signification than "debt." The term "debt"

I. TAXATION OF CLAIM FOR LOSS ON AN INSURANCE POLICY.

imports a sum of money owing upon a contract, express or implied, while "demand" embraces rightful claims whether founded on a contract, a tort, or a superior right to property. *United States Rolling Stock Co. v. Clark,* 95 Ala. 322 (10 South. 917). "Demand" is regarded as a word of wider signification than any other except "claim." *Vedder v. Vedder,* 1 Denio (N. Y.) 257, 261. Judge Story defined a "claim" in *Prigg v. Pennsylvania,* 16 Pet. 539 (10 L. Ed. 1061), as "in a judicial sense a demand of some matter as of right by one person upon another to do or to forbear to do some act or thing as a matter of duty." See cases collected in 2 Words and Phrases, 1202, 1973.

In Webster's Dictionary "claim" is defined as "a demand of a right, a calling on another for something due or supposed to be due." Without pursuing the inquiry further, it will be perceived that these policies, after the fire, came within the ordinary definition of claims, and there can be no doubt but that the Legislature employed the word in its most comprehensive sense. But it is objected, even if claims, they were contingent, and not perfected on January 1st, and therefore could not properly have been assessed. True, the proofs of loss had not been furnished. But the statute includes claims "due or to become due." If these were within the class to "become due," it would be immaterial whether this were because of the policy postponing the obligation to pay six days or owing to the necessity of serving proofs of loss. "If the claim had been merely one which would be due in sixty days, it comes within the definition of credits which embraces claims to become due as well as claims 'due,' and it would equally come within the definition if it was not yet due because the 'proofs' had not been made." *Cooper v. Board of Review,* 207 Ill. 472 (69 N. E. 878, 64 L. R. A. 72).

Again, it is said that the amount of damages had not been ascertained. The value of claims must necessarily be estimated by the assessor; and that there were difficulties in the way will not obviate the requirement that there be an assessment. Moreover, in estimating the value on January 1st, the assessor is not limited to conditions then known, but may use such information bearing thereon as may be available at the time the work of assessing is done. The value of the claims January 1st had become definitely known at that time. It is contended, however, that, as the insurance companies had the option to rebuild, the claims were purely contingent, and therefore not subject to taxation. Authorities holding that when in that situation insurers are not subject to garnish-

ment are cited. See *Hurst v. Dowling Ins. Co.,* 81 Ala. 171 (1 South. 209); *Dowling v. Lancashire Ins. Co.,* 89 Wis. 96 (61 N. W. 76); *Martz v. Insurance Co.,* 28 Mich. 201; 20 Cyc. 997. But these decisions proceed upon the theory that there must be a definite or absolute money liability in order to warrant holding the garnishee. An election to rebuild necessarily would relieve the company from liability as garnishee, but it would not destroy the character of the policy as constituting a claim. Conceding that, in event of electing to rebuild, the companies would cease to be insurers and become parties to a contract by which they agree to erect for the insured a building substantially like that destroyed (*Beals v. Insurance Co.,* 36 N. Y. 522), it is still "property due on contract" under section 1308 of the Code or "a claim due or to become due for money, labor or other valuable thing" under section 1309. In other words, the policies in connection with the loss constituted claims for money in compensation for damages for which indemnity had been contracted by payment of money or by the restoration of property destroyed, and, in either event, are included within the language of the assessment statutes. Should the insurers elect to rebuild, the building would not be included in the valuation of the realty for that year, and the claim of the insured would be for property and labor in the improvement of his land, and plainly within the terms of the statute quoted. To authorize the assessment of the policies as credits, it was not essential that the assessor know whether the claims were for money or might turn out to be for property, for in either event they would be assessable as credits, though these matters would have an important bearing in estimating the value of such claims. We are of opinion that the claims for loss under the policies were subject to taxation.

The assessor, with full knowledge of the facts, concluded that the claims were not assessable, and notified

defendant that he need not list them.   Appellant contends

2. SAME: assess-
ment of
property:
omission by
assessor: re-
view: subse-
quent assess-
ment.

that, in the absence of fraud or bad faith, this was such a determination as should be regarded as conclusive against another taxing officer attempting to assess the claims as omitted property.   The nature of the act was such that, but for statutes indicating that this was not the design of the Legislature, it might well be regarded as *quasi* judicial, and not open to subsequent review. Such a result is obviated by the system of assessment which obtains in this state.   To secure a fair assessment of large aggregation of capital, whether in the hands of individuals or corporations and a complete listing of moneys and credits are the difficult problems constantly confronting the taxing officers.   So much is at stake in the valuation of great properties that, owing to causes not necessary to enumerate, the tendency is always towards undervaluation.   The ingenuity of lawmakers has been exercised for generations in devising schemes for discovering personalty and getting it into the open for the purposes of assessment, and still it is a matter of common knowledge that but a small percentage of moneys and credits is ever listed for taxation.   Apparently this is due to no fault in the law, for our statutes, as heretofore construed, have seemed sufficiently drastic to secure the proper assessment of all property.   The prime difficulty is in their administration, and this accounts for statutory provisions intended to close every avenue of escape through collusion, evasion, or mistake.   Thus the duty of listing for taxation is cast on the person who owns or controls the property.   "Every inhabitant of this state, of full age and sound mind, shall list for the assessor all property subject to taxation in the state, of which he is the owner, or has the control or management, in the manner herein directed."   Section 1312, Code.   By section 1320 the duty of listing also devolves on an agent in possession

or control of personal property for another. The same duty is exacted of private banks or bankers, as well as of national, state, and savings banks and different corporations. Section 1321 *et seq.* Not only is this required, but the owner must subscribe to an oath that the assessment roll of property listed or assessed "to me" is a "full, true and correct list of my taxable property, both real and personal property, subject to taxation within this district, and all property which should be listed on this assessment roll to me or by me." Section 1360, Code. Refusal is punishable as a misdemeanor. Section 1354, Code. And other lists or information from which to make them exacted in the several sections cited must be verified, and on refusal one hundred percent may be added to the assessments. Section 1357, Code. It will be noted that the oath is not that the assessment roll contains all that such assessor found to be assessable as would be likely if the assessor were exercising *quasi* judicial functions, but that the list is of "all taxable property which should be listed on this assessment roll to me or by me." If the act of listing were thought judicial, it is scarcely conceivable that the owner would be required to verify the assessor's findings. Ordinarily it is enough to submit to the judgment of a court without swearing to its correctness. The several statutes cited plainly indicate the design of casting upon the taxpayers the burden of truly listing all property.

What is exacted from them under oath is required of the assessor as an official duty. Section 1352 of the Code provides that: "Each assessor shall enter upon the discharge of the duties of his office immediately after the second Monday in January in each year, and shall, with the assistance of each person assessed, or who may be required by law to list property belonging to another, enter upon the assessment rolls furnished him for that purpose the several items of property required to be entered for

assessment. He shall personally affix values to all property assessed by him." Section 1354: "The assessor shall list every person in his township, and assess all the property, personal and real therein, except such as is heretofore exempted or otherwise assessed and any person who shall refuse to make the oath required by the next section, shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined in a sum not to exceed five hundred dollars." Section 1360 directs the county auditor to furnish appropriate assessment rolls, and section 1356 that a copy of the assessment be delivered by the assessor to each person assessed with this notice: "If you are not satisfied that the foregoing assessment is correct, you can appear before the local board of review." Section 1357 prescribes a penalty for knowingly failing to make the assessment at the true value of the property, and section 1368 provides for the examination of assessors before boards of review concerning methods adopted in fixing valuations. It will be observed that these sections contain no intimation that the act of the assessor in listing or omitting property is to be regarded as final or conclusive. On the contrary, he is required to notify every taxpayer that such is not the case, but that he may appear before the board of review, and have any error corrected. Without such notice, he may appear and the omission thereof by the assessor in no way affects the validity of the assessment. *In re Kauffman's Estate,* 104 Iowa, 639. In some states the assessor may demand a sworn list of property, and in others the law requires the property holder to furnish such a list. The effect thereof, when furnished, necessarily depends on the wording of the several statutes. Thus in Massachusetts, when such a list is exacted, the assessors can not add thereto without notice to the person furnishing it. *Moors v. Boston St. Commissioners,* 134 Mass. 432. In Minnesota additions may be made by the assessor. *Thompson v.*

*Tinkcom,* 15 Minn. 295 (Gil. 226). As seen in this
state, the list is made up by the assessor with the assist-
ance of the owner and each is made responsible for its
correctness—the assessor because of his official duty and
the owner by his oath. The proceeding is in no sense
adversary, but necessary and indispensable to the deter-
mination of the exact share each property holder should
take and may be supposed to be desirous of taking in
meeting the public necessity for revenues. 1 Cooley on
Taxation, 595. There is no provision for an appeal from
the assessor, nor is any required, for nothing he does in
the way of listing property is final. Until examined in
detail and approved by the board of review, the assess-
ment is of no validity as the basis of a tax levy. Section
1366, Code.

It is the sanction of the board that fixes the valua-
tion of the several items as *quasi* judicial findings, and
these are subject to review on appeal. Section 1370 of
the Code provides that the board of review "shall adjust
assessments for the township, city or town by raising or
lowering the assessment of any person, partnership, cor-
poration or association as to any or all of the items of
his assessment, in such manner as to secure the listing
of property at its actual value and the assessment of prop-
erty at its taxable value, and shall also add to the assess-
ment rolls any taxable property not included therein,
assessing the same in the name of the owner thereof, as
the assessor should have done." Section 1371: "The
clerk or recorder of the township, city or town, as the
case may be shall be clerk of the board of review, and
keep a record of its proceedings, and the assessor shall
be present at its meeting and make upon the assessment
rolls all corrections or additions directed by the board.
At such meetings it shall be the duty of the assessor to
read each and every taxpayer's name and assessment on

the assessor's books, and, if the assessment is approved, pass to the next name. After checking the same, the board shall then take up the unchecked names in alphabetical order, and raise or lower the same as in their opinion will be just; checking off each taxpayer as the same is adjusted." The effect of this statute is to refer to the board of review the name of every taxpayer and his assessment for its approval or disapproval. Section 1372 prescribes the notice to be given of assessments raised and of property added, and provides for an opportunity of being heard with reference thereto. Section 1373 of the Code Supplement of 1907 defines the procedure by which any one aggrieved by the action of the assessor in assessing property (not in omitting it) and of the board in raising the assessment or adding property may be reviewed. Any officer of the several municipalities interested or any taxpayer therein is authorized to make complaint with respect to the assessment of any property, and may appeal from the action of the board thereon. So that property may be added to the assessment roll on the motion of the board or on the complaint of an officer or taxpayer, regardless of how it came to be omitted. It is the order of the board of review, if not appealed from, which is final, and the statutes will be searched in vain for suggestion that the action of the assessor is a finality as to anything save in correcting the assessment rolls as directed so as to appear as approved by the board of review. The assessor is not required to report to the board of review property not assessed or thought by him to be nonassessable. Is it possible that his act in omitting it from the assessment roll, if voluntarily done, is clothed with the sanctity of a solemn adjudication, even though the completed roll until approved by the board of review is not regarded as an assessment roll upon which taxes may be levied?

Decisions of the courts of New York and New Hamp-

shire are sometimes cited as so holding.   See *Barhyde v.*
*Shepherd,* 35 N. Y. 238; *Boody v. Watson,* 64 N. H.
162 (9 Atl. 794).   In New York three assessors are
elected in each town or ward of a city.   They, by mutual
agreement, divide the same into convenient assessment dis-
tricts, and then proceed to ascertain by "diligent inquiry"
the names of all the taxable inhabitants in their respec-
tive towns or wards and also all the taxable property, real
and personal, within the same.   When the assessment
roll is completed, it is left with one of their number and
public notice given it has been completed, where to be
found and that on the third Tuesday in August at the
designated place the assessors will meet and review the
assessments, then hear and pass on all complaints, and,
save for manifest errors to be corrected by the board of
supervisors, their decision appears to be final.   See part
1, chapter 13, title 2, article 2, 1 Rev. St. New York
(1st. Ed.).

The decisions of that state disclose that the acts of
the assessors declared to have been judicial in character
were of the assessors sitting as a board of review.   In
*Boody v. Watson, supra,* the property had been declared
exempt by a board known as the selectmen of the town,
and the reference to the assessment was that of this body.
We have been unable to discover any decision hold-
ing that the duty of merely listing for assessment is *quasi*
judicial in its nature.   In *Van Wagenen v. Supervisors,*
74 Iowa, 716, the stock had been assessed, and the as-
sessment approved by the board of review.   Moreover, it
was taxable as has since been held.   *Judy v. Beckwith,*
137 Iowa, 24.   All decided in *German Savings Bank v.*
*Trowbridge,* 124 Iowa, 514, was that property assessed
and on the tax list could not be assessed again by the
county treasurer.   The point was not touched in *Ind.*
*School Dist. v. Board,* 131 Iowa, 195.

On the other hand, authorities are not wanting which

proceed on the theory that the functions of the assessing officer are ministerial. *Baldwin v. Shune*, 84 Ky. 512 (2 S. W. 164); *Vandercock v. Williams*, 106 Ind. 345 (1 N. E. 619, 8 N. E. 113); *Auditor of State v. Railway*, 6 Kan. 500 (7 Am. Rep. 575); *Mayor, etc., of City of Baltimore v. Bonaparte*, 93 Md. 156 (48 Atl. 735). See *State Board of Equalization v. People*, 191 Ill. 528 (61 N. E. 339, 58 L. R. A. 513). Some courts in construing particular statutes have held that in fixing values on taxable property the assessor acts judicially. See *Stewart v. Cash*, 53 Minn. 62 (54 N. W. 938, 39 Am. St. Rep. 575). But the point has never been before this court, though it has been remarked that the making of an assessment is a *quasi* judicial function. See *Security Savings Bank v. Carroll*, 128 Iowa, 230; *Berestein v. Arnd*, 117 Iowa, 83. The assessments referred to in these cases were those appearing in the tax list, and therefore after approval by the board of review. Whether in the preliminary work of making up the assessment roll every item of which must be read to and approved by the board of review any act of the assessor can be said to be final or conclusive in a subsequent review is, to say the least, extremely doubtful.

But we are now concerned only with the act of omitting property from the assessment roll; and, as seen, the circumstance that he has intentionally done this interposes no obstacle to its subsequent assessment by the board of review. Other statutes expressly authorize its assessment, if ignored, by both the board of review and assessor, and thereby plainly indicate the legislative intention that a finding by the latter should not be regarded as *quasi* judicial in character. Section 1385b, Code Supp. 1907. "The auditor may correct any error in the assessment or tax list and may assess and list for taxation any omitted property; but, before assessing and listing for taxation any omitted property, he shall notify by registered letter

the person, firm, corporation or administrator, or other person in whose name the property is taxed, to appear before him at his office within ten days from the time of said notice and show cause, if any there be, why such correction or assessment should not be made, and should such party feel aggrieved at the action of said auditor, he shall have the right of appeal therefrom to the district court." Is taxable property any the less omitted from the assessment roll when the assessor has been told of its existence on the street or in private conversation, and renders his opinion that it is not taxable, than when it is left off the assessment roll through oversight or ignorance of its existence? What is meant by omitted? Webster's Dictionary says to omit means "to let fail, to leave out, not to insert or name." The Century Dictionary: "To fail to use or to do; neglect; disregard; to fail, forbear, neglect to mention or to speak of; leave out; say nothing of; to leave out; forbear, fail to assert or include, as to omit an item from a list." The Standard Dictionary: "To fail to include, insert or mention; leave out; pass over; overlook; drop, as to omit an important fact." The cause of omission is not suggested in this statute, so that, if for any reason taxable property has been "left out" of the assessment roll by the assessor, it is subject to assessment by the auditor.

Still another officer is authorized to assess property which has not reached the assessment roll. Section 1374 of the Code provides that: "When property subject to taxation is withheld, overlooked, or from any other cause is not listed or assessed, the county treasurer when apprised thereof, at any time within five years from the date at which such assessment should have been made, shall demand of the person, firm, corporation or other party by whom the same should have been listed, or to whom it should have been assessed, or of the administrator thereof, the amount the property should have been

taxed in each year the same was so withheld or overlooked and not listed and assessed, together with six percent interest thereon from the time the taxes would have become due and payable had such property been listed and assessed, and upon failure to pay such sum within thirty days, with all accrued interest he shall cause an action to be brought in the name of the treasurer for the use of the proper county, to be prosecuted by the county attorney, or such other person as the board of supervisors may appoint, and when such property has been fraudulently withheld from assessment, there shall be added to the sum found to be due a penalty of fifty percent upon the amount which shall be included in the judgment. The amount thus recovered shall be by the treasurer apportioned ratably as the taxes would have been if they had been paid according to law." The above language would seem to be broad enough to include all taxable property which has not been listed for taxation. Again, resorting to the lexicographers, we find that Webster's Dictionary defines "withhold" as meaning "(1) to hold back; to restain; to keep from action; (2) to retain; to keep back; not to grant." The Century Dictionary says it means "to hold back; keep from action; to keep back; refrain from going, giving." Plainly enough by taxable property withheld is meant property held or kept from being entered on the assessment roll. This may have been done by the person owning or controlling the property, whose duty it was to assist the assessor, or by that officer in not listing property to which his attention was directed. As the duty of entering on the assessment roll devolves on the assessor, there is as much reason for saying that the language of the statute applies to him as to the person whose property is assessed. The statute does not undertake to point out who may be at fault in withholding from assessment, but plainly covers all property voluntarily or purposely not listed on the roll. This view is emphasized

by the addition of the word "overlooked." Webster's Dictionary defines "overlook" as meaning: "To look beyond so that what is near by is not perceived; to omit to see by looking at other objects; to neglect by carelessness or inadvertence; to pass by. (2) Hence, to refrain willingly from noticing; to excuse, to pardon." The Century Dictionary: "To look beyond or by so as to fail to see or so as to disregard or neglect; pay no attention to; disregard; hence, to pass over indulgently; excuse, forbear to punish or censure." The Standard Dictionary defines the word as meaning: "To look over, by or beyond, so as to avoid seeing; disregard purposely; forgive; condone; to fail to see, notice or observe; disregard negligently or accidentally; slight; as he overlooked the papers in a hurry." Manifestly it was intended to cover by the word "overlooked" all property omitted because not noticed or disregarded by the owner or assessor whether due to neglect, accident, inattention, or indulgence. These words would seem to cover every possible contingency; but out of abundance of caution the Legislature added to what preceded—i. e., "When property subject to taxation is withheld, overlooked"—the clause "or for any other cause is not listed and assessed." The evil to be remedied was the escape of property from taxation because of being omitted from the tax lists. Prior to its enactment there was no remedy after the tax lists had been completed, and such as was afforded prior thereto was inadequate. The manifest design was to provide an adequate remedy by which all omitted property might be subjected to its proper share of the public burdens and to render this available within the reasonable period of five years.

It has been suggested that the rule of "ejusdem generis" has some place in the construction of this statute. If this be conceded and that "other cause" be "narrowed and restricted" to causes like those expressed in "withheld" or "overlooked," it would be well to indicate some

of like causes. What other taxable omitted property could there be save that which was overlooked, and that which was not overlooked, but was withheld from the assessment roll? The statute does not undertake to designate the cause of being "withheld, overlooked" so that the words "other cause" must refer to the manner of the omission from the list, and, even if such manner of omission must be of like kind, a contingency not covered thereby can not be imagined. The language of the Supreme Court of Indiana in a somewhat similar case is especially pertinent: "The tax law contemplates instances of omission of property from current lists, not only on account of evasions and concealments of property owners, but also by reason of derelictions of the officers' upon whom rests the primary duty of listing all taxables. It is conceivable that, if the primary taxing officers were infallible, there would be no instances of omitted property. Yet so careful is the state to guard against loss to its' revenues from the remissness of those officers that four different officers are each commanded to look after the state's continuing claim for taxes from property omitted from assessment in any year, or number of years and from any cause. Nothing will discharge the state's claim but actual payment, and the general law must be liberally construed in aid of the taxing power. *Graham v. Russell,* 152 Ind. 186 (52 N. E. 806), and cases cited; Burns' Ann. St. 1894, section 8642 (Horner's Ann. St. 1897, section 6491). But no construction, however strict, would require the officers in listing omitted property to pass by the property of corporations when the statute empowers them to list any omitted property, or to overlook omissions resulting from the fault or inaction of the primary listing agents, when the statute directs them to list omitted property from any cause." *Hunter Stone Co. v. Woodard,* 152 Ind. 474 (53 N. E. 947). The primary duty of assessing is imposed on the assessor and board of review. That any

property may have escaped their notice, or been purposely
omitted by the assessor and not brought to the attention
of the board of review, does not render such property any
the less taxable, nor relieve its owner of his obligation
to bear his proportional share of the governmental burdens.
In dealing with vast amount and varieties of valuables
omission of considerable is inevitable.  If such omission
is discovered within a reasonable time, it ought not to
escape taxation.  To meet such a contingency, the duty
of assessing omitted property is imposed on the county
auditor and treasurer; the latter being authorized so to
do at any time within five years.  This works no hard-
ship on owners, and circumstances seldom, if ever, are
such as to justify a special plea for the construction of
the assessment statutes in their interest.  The law in
every instance requires notice to the owner and an op-
portunity to be heard before adding omitted property,
and the owner is in no wise injured by the belated assess-
ment for no penalty save where fraud has been perpe-
trated is imposed, interest being added at the lowest legal
rate.  Of course, property declared nontaxable by a trib-
unal on which authority to decide has been conferred is
not omitted property within the meaning of the law for
it has been adjudged otherwise.

Our statutes, as seen, contemplate no such adjudica-
tion, save on notice and hearing, and neither are provided
with respect to anything exacted of the assessor.  If, not-
withstanding his rulings, the board of review discovers
that through mistake, partisanship, corruption, or ignor-
ance these have been erroneous in leaving taxable property
off the roll, the board of review may add it.  This is not
owing to any appeal from the assessor, but for the reason
that the assessor's findings are not binding on that body,
as they were not intended by the Legislature to be on the
county auditor or treasurer.  If the property is listed and
no objection thereto is raised before that board, unless

changed by it, such listing is treated as approved, and can not thereafter be assailed as not assessable. This is because of having been brought before the board where a hearing is authorized, and not owing to the assessor's decision in having entered it on the assessment roll. Property neither listed nor brought to the attention of the board has not been the subject of a hearing, nor has the owner been put in a situation to demand it. The functions of the county treasurer and auditor in the matter of adding omitted property are like those of the board of review. An appeal may be taken from the findings precisely as from those of the board. That the procedure before the auditor and treasurer with reference to property omitted by the assessor is substantially like that before the board of review is convincing that the findings of the assessor were intended to be no more conclusive on the auditor or treasurer than on the board of review. The authority to determine finally what property is taxable must be lodged somewhere, and the statutes have plainly indicated that such final authority has been imposed on the board of review first, and thereafter as to property not called to its attention on the county auditor or treasurer subject to appeal to the courts. Only by giving to the statutes cited a construction not justified by the language employed and contrary to the manifest purpose of the Legislature can any other conclusion be reached. That adopted will wrong no man. It will deprive no one of his property without a hearing. It will subject no one to a second trial of the same issues. It will result in the taxation of no taxable property which ought not to be taxed. It will defeat, and it ought to defeat, the successful interposition of a plea of former adjudication in proceedings for the assessment of omitted property by the county auditor or treasurer by the evidence of an assessor that he can not remember and of the owner that he can

remember of having submitted the question of its taxabil-
ity privately to such official.

We are of opinion that the finding of the assessor that
the claims were not assessable was not conclusive, and was
no obstacle to the subsequent assessment by the county
treasurer.—Affirmed.

WEAVER, J. (dissenting).—This case having once been
assigned to me to write, I prepared an opinion reversing
the judgment below. It seems, however, that I, performed
the task so ineffectually as to convince a majority of the
court of the necessity of an affirmance. But with the def-
erence which is due to overpowering numbers and to the
distinguished ability and ingenuity which mark the pre-
vailing opinion I am forced to dissent from its conclusions,
and, as the opinion originally prepared by me set forth
quite fully my views on the subject, I incorporate it as
follows:

On December 23, 1904, a building on the land of
the defendant was destroyed by fire. It was insured in
several companies, but the loss was not adjusted until
after the 1st of January, 1905, the date to be considered
in the assessment of personal property for purposes of tax-
ation. Code section 1350. The policies by which said
insurance was effected were subject to the ordinary con-
ditions of forfeiture, and provided that losses thereunder
should be payable sixty days after due notice, ascertain-
ment, estimate, and satisfactory proofs should be furnished
to the insurers. In each case, however, the insurer re-
served the right to elect whether it would pay the loss
then ascertained or repair or rebuild the structure which
was the subject of the insurance. It follows, therefore,
that on January 1, 1905, the validity of the defendant's
claims, if any he had for the recovery of said insurance,
depended on the following questions: (1) Whether there
had been a breach of the conditions of the policy on his

part releasing the insurers from liability; and (2) upon his making and presenting the necessary proofs of loss. On the date named the loss, as we have already noted, was unadjusted, the amount of the damage was unascertained, and whether the insurers would repudiate all liability, or elect to rebuild, or to pay the indemnity in money, was as yet unknown. When called upon by the assessor to list his property for assessment, the defendant reported or disclosed these facts to the assessor to be listed if that officer should hold the claim against the insurance companies to be of an assessable character. The assessor, believing and holding that the claims were not assessable, omitted them from the list. No change of the assessment in this regard was made by the board of review, and thereafter, the facts having been brought in some manner to the attention of the county treasurer, he proceeded to assess the same as omitted property, and brought this action for the recovery of the taxes thereon as provided by Code section 1374.

Counsel have presented for our consideration two questions: (1) Upon the admitted facts as stated, were the claims against the insurance companies assessable on January 1, 1905? (2) If as a legal proposition said claims were assessable, did the treasurer under the admitted circumstances have jurisdiction or authority to assess them as omitted property?

I. In view of our conclusion upon the last inquiry, it is not necessary for us now to pass upon the first farther than to say that the question is not one wholly free from doubt, and the assessor might well reach the conclusion he did without special discredit to his intelligence or knowledge of the law; for, while the terms "debts, claims, and demands" are of very broad and comprehensive character, they certainly are not unlimited in signification; and their meaning is more or less restrained by the character of the subject matter to which they are applied. They

may for instance be so construed as to include without
exception all claims and demands arising in contract or
tort, absolute or contingent, liquidated or unliquidated,
direct, immediate, or remote, but no one we think would
go to this extent in defining taxable property.   There
must be a line drawn somewhere short of this all-inclusive
sweep of the terms of the statute.   A man may have a
claim for damages for assault and battery or for personal
injury occasioned by the negligence of another, or for slan-
der or libel; a landlord may have a claim against his ten-
ant for failure to cultivate a leased farm according to
contract; a farmer may have a claim against a manufac-
turer for breach of warranty of a reaper; a woman may
have a claim for damages for seduction or for breach of
promise of marriage—but certainly these claims are neither
assessable nor taxable until at least they have been reduced
to judgment or otherwise converted into a liquidated de-
mand.   It may be fairly said that the border line where
an untaxable right merges into a taxable demand is not
always clear and well defined.   The claim in the present
case, though arising in contract, was unliquidated.   It
was possible that the insurers would plead and prove some
act or omission of the insured wholly vitiating the poli-
cies, and entirely defeating a claim for recovery thereon.
The amount of the loss was undetermined.   The companies
might elect to rebuild or repair.   In view of all these
facts, the assessor decided that the case disclosed nothing
of a taxable character, and his conclusion, even if in-
correct, was not unreasonable.

II.   It is the contention of the appellant that, the
facts and circumstances having been fully revealed to the
assessor, the decision of that officer in the discharge of
his official duties that the unadjusted and unliquidated
claims for insurance were not assessable constitutes an
adjudication of the question which can not be set aside
or ignored in a collateral proceeding, and that, until va-

cated upon appeal or by other direct attack, it is, final. This proposition is denied by the appellee, who insists that the assessor was not acting judicially in the premises, and that his failure to enter the property upon the assessment roll leaves it to be classified as "omitted property" within the meaning of Code section 1374, which authorizes the treasurer to assess property which is subject to taxation, but has been "withheld, overlooked, or for any other cause is not listed or assessed." The language of this statute is broad, but it certainly is not illimitable in its scope. Upon well settled principles of interpretation the meaning of the words "any other cause" is narrowed and restricted to other causes of the general class and kind which are expressed in the preceding words "withheld or overlooked." This rule, commonly spoken of in the books as the rule of *ejusdem generis,* is not of universal application, but the exceptions thereto are not numerous. *Langstaff v. Rock,* 13 Mo. 579; *Edson v. Hayden,* 20 Wis. 682; *State v. Goodrich,* 84 Wis. 359 (54 N. W. 577); *State v. Campbell,* 76 Iowa, 122; *Ice & Coal Co. v. Greenville,* 69 Miss. 86 (10 South. 574); *St. Louis v. Laughlin,* 49 Mo. 559. Certainly if the functions of an assessor in listing and valuing property for taxation are judicial in character, and such assessor, acting within his jurisdiction, has considered the matter of a given matter of property, and finding it in his judgment to be nonassessable does not enter it upon the roll, it can not be said that this item has been withheld or overlooked, or that its nonappearance on the roll is chargeable to "any other cause" of that kind or nature. If the question has been adjudicated by an officer or tribunal of competent jurisdiction, even though the conclusion be erroneous it is not "omitted property" with which the treasurer is authorized to deal under the statute because until that adjudication has been re-

versed or set aside the property is not assessable by any
officer.

It is not within the proper domain of legislation to
create two tribunals, each having jurisdiction to decide
the same question and to give to either authority to dis-
regard or ignore the decision of the other regularly en-
tered.   Nor do we think the statute contemplates such a
result.   It is manifest, therefore, that from whatever ave-
nue we approach the issue presented by this appeal we
must meet and dispose of the question as to the true char-
acter of the functions exercised by the officer who is charged
primarily with the duty of making the assessment.   While
it may not be easy to reconcile all the precedents, the
great weight of authority is to the effect that in listing
and assessing the property within his taxing district the
assessor acts judicially.   In the very nature of the case
this would seem to be so.   Under the restrictions imposed
by our Constitution, state and national, it is not com-
petent for the state to take private property for public
use by taxation or otherwise without due process of law.
It is settled by an unbroken line of decisions that there
can be no valid taxation without assessment and no valid
assessment which does not provide for some kind of notice
to the property owner and opportunity for him to con-
test the liability of his property to the proposed tax, and,
if the tax is to be imposed upon an *ad valorem* basis, he
is also entitled to be heard upon the question of valua-
tion.   When completed, whether by the assessor, or by
the board of review, or by the county auditor, or treas-
urer, or by the court on appeal under the statute, it
constitutes a finding, first, of the taxable character of
the property therein listed; second, of its taxable value;
and, third (if the property be personal), of the person
liable to pay the tax.   Such a finding made by a public
officer or officers after giving the party in interest a hear-
ing or opportunity to be heard has all the essential char-

acteristics of judicial action. It is not correct to say that the statute points out all taxable property with specific certainty, and the assessor has only a ministerial function in listing it. Not all real estate is taxable, for some is exempt as being the property of the county, the city, the school district, church organizations, or educational institutions. Not all personal property is taxable, for exemptions are granted to farmers and others upon numerous items and classes of movable assets. Not all moneys and credits are taxable, for those belonging to schools and colleges are relieved from contributing to the public revenues. The homesteads of soldiers and soldiers' widows to a stated value are not to be taxed. Soldiers' pensions are exempted from the definition of credits. The statute does not attempt to enumerate or point out taxable properties in such specific terms that assessing officers have no duty in listing them but to count them up and enter them in the appropriate books. It deals with the subject in general terms only, and these officers must of necessity examine, inquire, and ascertain as to each item of property within their jurisdiction whether it is such as the law makes taxable, and, if so, what its value is, and to whom it ought to be taxed.

When the ownership of property is disclosed by the owner to the assessor and its taxable character is doubted or contested, that officer is not only empowered, but it is his duty, to pass upon the question thus raised, and, if he does it and rules either in favor or against the owner and his work is left unchallenged by or before the board of review, whom does the statute authorize to dispute the finality of his finding? The property has not been overlooked. It has not been omitted or suppressed from the showing made by the owner, but with all the facts before him the assessor has passed upon the very question for the consideration of which his office was created. Let us suppose that the owner is a pensioner of the United States,

and over his objection the assessor includes the pension
in the valuation of the moneys and credits upon which
the owner should pay taxes.   Or suppose that the owner
has in fact no personal property of any kind and so in-
forms the assessor, but the latter, disbelieving the state-
ment, proceeds to assess him as the owner of taxable mon-
eys, credits, horses, and cattle and delivers to him a
notice as required by law (Code section 1356) of the
assessment made and of his right to appear before the
board of review, and show cause why the assessment should
be vacated.   Let us then further suppose that the person
so assessed fails to make his objection before the board,
and permits the assessment to stand unchallenged until
the time for review provided for in the tax statute has
passed, and then seeks relief by suit in equity or other-
wise, will he not be held to have had his day in court,
and to be estopped to deny the binding and conclusive
effect of the assessment as an adjudication of the question
which he now seeks to raise?   *Harris v. Fremont County,*
63 Iowa, 639; *Macklot v. Davenport,* 17 Iowa, 385; *Meyer
v. Dubuque,* 43 Iowa, 592; *Nugent v. Bates,* 51 Iowa, 77.
In other words, the matter which he now proposes to
litigate has been once adjudicated against him by a tri-
bunal created for that purpose, and, having failed to seek
a reversal of such finding by the board of review or by
appeal as the law provides, he is concluded.   Under the
uniform holdings of this court that question is not open
to debate.

   But, if an assessor's finding is an adjudication, where
he assesses and causes to be taxed property which should
have been exempted or omitted, why is it not equally an
adjudication when acting in good faith upon a disclosure
of all the facts he passes as exempt property which should
have been assessed?   Assuredly the judicial or nonjudicial
character of his decision upon the question before him does

not depend upon the way he decides it. Whether the assessor's functions are judicial in character was suggested in *Galusha v. Wendt,* 114 Iowa, 597, and not directly decided, but such proposition is, we think, indirectly affirmed in several of our cases. For instance, the county treasurer in listing and assessing omitted property exercises functions of precisely the same kind and character as those exercised by the assessor. He lists property, designates the owners to whom it is to be taxed, and fixes its value. In so doing we have repeatedly held that he acts judicially. *Bank v. Carroll,* 128 Iowa, 230; *Stevens v. Carroll,* 130 Iowa, 463. See also *Railroad Co. v. Wright,* 207 U. S. 138 (28 Sup. Ct. 47, 52 L. Ed. 134), and cases there cited. It may also be said that *Macklot v. Davenport, supra,* and numerous other cases of that class, can be satisfactorily explained and upheld on no other ground than that of the judicial character of the assessor's office and the finality of his finding concerning property within his jurisdiction until that finding has been reversed or set aside in the manner provided by law.

Nor is it practicable to distinguish between the words "list" and "assess," and say that, though one may be judicial, the other is ministerial. In *Beresheim v. Arnd,* 117 Iowa, 90, a contention for a material distinction in these words was considered, but the court, speaking by Waterman, J., says: "It is true that the words 'list' and 'assess' are used in the chapter relating to taxation in a somewhat different sense, but always as a part of the same process of getting the property upon the tax roll." If listing be confined in its meaning to the mere clerical act of writing or formulating the book or roll, such work would, of course, not be judicial, but this routine work presupposes an inquiry into the facts and a determination that the property so listed is of the kind and character made taxable by the statute, and is not covered by any

of its exemptions or exceptions. The judicial character of the assessor's work and the effect of an exemption allowed by him as a final adjudication is directly sustained by us in the late case of *Judy v. Bank,* 133 Iowa, 265. The New York court has had occasion to consider the nature of the assessor's work both in listing and valuation of the property. In *Vail v. Owen,* 19 Barb. 22, the plaintiff had no property except such as was exempt from taxation and brought suit against the assessor for wrongfully listing and assessing it, and the court held that the assessor acted in a judicial capacity, and was therefore not liable in damages for his error. In *Brown v. Smith,* 24 Barb. 419, it was held that the assessor acts judicially in determining the residence of a person for the purposes of taxation. In *Chegary v. Jenkins,* 5 N. Y. 376, the assessors listed and assessed property which the owner occupied for private school purposes and was exempt under the laws of that state. The court there says: "The assessors in determining whether plaintiff's property was taxable as a dwelling or exempt as a seminary of learning acted judicially and within the scope of their duty." In *Barhyte v. Shepherd,* 35 N. Y. 238, the plaintiff claimed the benefit of exemption from taxation for all his personal property, but the assessors overruled his claim, and assessed his moneys and credits for taxation. In an action brought by him for damages against the assessors, the court while holding that he was entitled to the exemption say that the functions exercised by the assessors in listing and assessing the property were "eminently judicial," and for that reason the action could not be maintained. In *Mayor v. Davenport,* 92 N. Y. 604, it is said: "The assessors of the several towns first make out their rolls and determine their valuations. In this respect they act judicially, and any erroneous decision can only be corrected by direct review of their proceedings whenever they have kept within their jurisdiction."

In *Boody v. Watson,* 64 N. H. 162 (9 Atl. 794), the assessors omitted certain factory property from assessment as being exempt. In litigation growing out of this act the court says: "In determining what property was taxable and what was exempt the defendants acted judicially." The doctrine of the opinion in *Barhyte v. Shepherd,* was approved and applied in *Bell v. Pierce,* 51 N. Y. 12, where the act of the assessors in deciding the property owner to be a resident of their jurisdiction was held to be a judicial finding.

The statement in the majority opinion that these cases from New York involve only adjudications by a board of review, and not by the assessor, indicates a misapprehension of the effect of the statutes of that state and of the practice there pursued in assessing property for taxation. A case of our own not cited above is directly in point. See *Van Wagenen v. Supervisors,* 74 Iowa, 716. There Miller & Thompson, residents of Lyon county, were assessed among other assets with certain shares of stock in Minnesota corporations. On the theory that this property was not taxable in that county, they applied to the board of supervisors to order a rebate of the tax, and this relief was granted. Van Wagenen, a taxpayer of the county, instituted *certiorari* to annul the order. This court sustained the writ and annulled the order, saying: "The first question to be determined, it seems to us, is whether the assessment was void or merely erroneous. Miller & Thompson, as we have seen, were residents of Lyon County, and were liable to be assessed there with all the personal property owned by them. The assessing officer had the power and jurisdiction to determine that the bank shares were assessable in that county. He may have erred, but clearly we think that the assessment was not void." The opinion also holds that to escape the finality of the assessment made by the assessor application should have been made by the board of review, and

an appeal taken therefrom if relief was denied.  While
the cited case does not make use of the term "judicial"
as applied to the finding and action of the assessor, it does
give them a force and effect which can have no other foun-
dation than in the theory that such was in fact their es-
sential character.  Assuming the correctness of the hold-
ing above quoted, that "the assessing officer had the power
and jurisdiction to determine that the bank shares were
taxable," and that, if his decision was erroneous, the rem-
edy was by application to the board of review, it follows
of necessity that, if he had reached the opposite conclu-
sion—that is, that the shares were not taxable in that
jurisdiction and for that reason had omitted them from
the list—his act in so doing even if erroneous was not
void, and no other officer charged with the duty of listing
and assessing property overlooked or withheld from the
regular assessment could rightfully ignore it.  It is no
answer to this theory of the law to say that it makes
the state liable to loss of revenue because of the mistakes
of the assessor, and that there ought to be some method
by which their correction can be had.  No method of tax-
ation has been or can be devised which excludes all possi-
bility of mistake or provides perfectly for the correction
of all errors.  The authority to make final determination
must be lodged somewhere.  Some officer or tribunal must
be authorized to make examination and discover and list
the taxable property, determine whether a given item is
"property" within the meaning of the tax statute, and, if
so, whether it is included within any of the statutory
exceptions or exemptions.  When, after due notice to the
property owner, this function has been performed, it
must in the very nature of the case be final and conclu-
sive save where the law provides some scheme for its re-
view upon appeal or other direct method of contesting its
justice or sufficiency.  But it is a well settled proposition
that, in the absence of any provisions for appeal, the deter-

mination by the tribunal of first instance answers the constitutional requirement of due process of law, and, if it works a conclusive estoppel upon the owners of taxable property, then upon all sound principle the estoppel must be mutual, and it is not competent for the state to say that it is a nullity.

This must, of course, be understood as applicable only to determinations or adjudications within the jurisdiction of the assessing officer, but, when the person and the property are both within the bounds of his taxing district, his jurisdiction is complete, and the rightfulness of the assessment made by him must be tested by a review thereof as provided by law. *Van Wagenen v. Lyon County, supra; Bell v. Pierce, supra; Ind. Dist. v. Board,* 131 Iowa, 195. That such is the legislative view of the situation is further evidenced by the statute which provides for authority in the board of review not only for the correction of errors in the assessment of any given item of property and for the addition to the roll of any omitted property, but also authorizes any officer or taxpayer of the county, city, town, township, or school district to appear before the board and contest the correctness of the assessment roll and of the action or order of the board and to appeal therefrom to the district court. Code, section 1370; Code Supp. 1907, section 1373. Here is furnished ample opportunity for the correction of all errors in the assessment roll, at least all errors with reference to property which has been discovered and considered by the assessing officer; and, if having given full opportunity, not only to the property owner, but to every municipality, officer and taxpayer having any direct or indirect interest therein, to appear and contest its correctness, it is uncontested by any person, and the roll is confirmed and passed by the board of review, it would seem that due regard for regularity of procedure and for the right of the citizen to rely upon adjudications regularly made by public officers or

tribunals designated for that purpose requires the court
to respect and uphold their finality.

If it then be asked what is the nature of the duty
imposed upon the treasurer with respect to the assessment
of omitted property, it may be answered that, if such
duty is not clearly defined by the statute, this court has
already placed an authoritative interpretation upon it.
In *Bank v. Trowbridge,* 124 Iowa, 514, there was an
attempt by the treasurer to increase the valuation of cer-
tain bank stock which had been listed by the assessor.
In discussing the propriety of this action the opinion says
of the statute in question: "Clearly the purpose of the
statute and the sole purpose thereof was to provide means
whereby property which had *escaped the attention of the
assessor or had been withheld from his knowledge* might be
added to the assessment roll and made to bear its just share
of the public burdens. It was not intended to have any
application to those cases where property, the subject of
taxation, has been entered on the assessment books—in
other words, has not been withheld, overlooked, or from
any other cause not listed. Certainly it was *not intended
to constitute the treasurer a reviewing officer with respect
to the work the assessor was elected to do."* Construing
the statute as making the treasurer *ex officio* assessor for
the purpose of listing and assessing taxable property which
by oversight, fraud, mistake, or otherwise has not been
discovered and passed upon by the assessor of the proper
taxing district, we avoid all incongruity in the functions
of the two offices and as near as possible subject all prop-
erty within the county to an official investigation as to its
taxable character and value. The authorities to which
we have referred by no means exhaust the list of precedents
maintaining the judicial or *quasi* judicial character of
the assessor's office, but we have cited enough to indicate
that such is the prevailing view, and the rule so upheld

appears to us to be bottomed upon fundamentally sound principles.

It follows from the foregoing discussion that the appellee herein as county treasurer was without jurisdiction or authority to review or ignore the action and decision of the assessor with reference to the taxable character of appellant's claims against the insurance companies, and that the decree of the district court ought to be reversed, and the assessment made by the appellee annulled and vacated.

EVANS, J., concurs in the foregoing dissent.